# EXHIBIT A

# FLORIDA
## AUTO POLICY

Form 9611D FL (07/17)
version 2.0



**INSURING AGREEMENT** ................................................................................ 1

**GENERAL DEFINITIONS** ............................................................................... 1

**PART I—LIABILITY TO OTHERS**

    Insuring Agreement—Bodily Injury ........................................................ 3
    Insuring Agreement—Property Damage ................................................. 3
    Additional Definition ............................................................................... 3
    Additional Payments ............................................................................... 4
    Exclusions .............................................................................................. 4
    Limits of Liability .................................................................................... 6
    Financial Responsibility Laws ................................................................ 7
    Other Insurance ..................................................................................... 7
    Out-of-State Coverage ........................................................................... 7

**PART II(A)—PERSONAL INJURY PROTECTION COVERAGE**

    Insuring Agreement ................................................................................ 8
    Additional Definitions ............................................................................. 8
    Exclusions ............................................................................................ 10
    Limit of Liability ..................................................................................... 11
    Other Insurance ................................................................................... 12
    Conditions ............................................................................................ 12
    Extended Personal Injury Protection Coverage ................................... 16

**PART II(B)—MEDICAL PAYMENTS COVERAGE**

    Insuring Agreement .............................................................................. 17
    Additional Definitions ........................................................................... 18
    Exclusions ............................................................................................ 19
    Limits of Liability .................................................................................. 20
    Unreasonable or Unnecessary Medical Expenses .............................. 21
    Other Insurance ................................................................................... 22

**PART III—UNINSURED MOTORIST COVERAGE**

    Insuring Agreement .............................................................................. 22
    Additional Definitions ........................................................................... 23
    Exclusions ............................................................................................ 24
    Limits of Liability .................................................................................. 24
    Other Insurance ................................................................................... 26
    Trust Agreement .................................................................................. 27
    Our Rights to Recover Payment ........................................................... 27

**PART IV—DAMAGE TO A VEHICLE**

    Insuring Agreement—Collision Coverage ............................................ 27
    Insuring Agreement—Comprehensive Coverage ................................. 27

Insuring Agreement—Additional Custom Parts or
      Equipment Coverage ...................................................................28
Insuring Agreement—Rental Reimbursement Coverage............................28
Insuring Agreement—Loan/Lease Payoff Coverage ................................29
Insuring Agreement—Pet Injury Coverage.............................................29
Additional Definitions...........................................................................30
Exclusions ...........................................................................................30
Limits of Liability.................................................................................32
Payment of Loss...................................................................................33
No Benefit to Bailee .............................................................................33
Loss Payable Clause.............................................................................33
Other Sources of Recovery....................................................................34
Appraisal .............................................................................................34

**PART V—ROADSIDE ASSISTANCE COVERAGE**

Insuring Agreement ...............................................................................34
Additional Definitions...........................................................................35
Exclusions ...........................................................................................35
Unauthorized Service Provider...............................................................36
Other Insurance ...................................................................................36

**PART VI—DUTIES IN CASE OF AN ACCIDENT OR LOSS**...........................36

**PART VII—GENERAL PROVISIONS**

Policy Period and Territory....................................................................37
Changes...............................................................................................37
Duty to Report Changes ........................................................................38
Settlement of Claims.............................................................................38
Terms of Policy Conformed to Statutes ..................................................38
Transfer of Interest ...............................................................................38
Fraud or Misrepresentation ...................................................................38
Payment of Premium and Fees ..............................................................39
Cancellation ........................................................................................40
Cancellation Refund.............................................................................41
Rate Increases .....................................................................................41
Noncancelable Policy ...........................................................................41
Nonrenewal .........................................................................................42
Automatic Termination..........................................................................42
Legal Action Against Us........................................................................42
Our Rights to Recover Payment..............................................................43
Joint and Individual Interests.................................................................44
Bankruptcy..........................................................................................44
Mediation ...........................................................................................44

## INSURING AGREEMENT

In return for **your** payment of the premium, **we** agree to insure **you** subject to all the terms, conditions and limitations of this policy. **We** will insure **you** for the coverages and the limits of liability shown on this policy's **declarations page**. **Your** policy consists of the policy contract, **your** insurance application, the **declarations page**, and all endorsements to this policy.

## GENERAL DEFINITIONS

The following definitions apply throughout the policy. Defined terms are printed in boldface type and have the same meaning whether in the singular, plural, or any other form.
1. "**Additional auto**" means an **auto you** become the actual or beneficial owner of during the policy period that does not permanently replace an **auto** shown on the **declarations page** if:
   a. **you** notify **us** within 30 days of becoming the owner of the **additional auto**; and
   b. **you** pay any additional premium due.

   An **additional auto** will have the broadest coverage **we** provide for any **auto** shown on the **declarations page**. If **you** ask **us** to insure an **additional auto** more than 30 days after **you** become the actual or beneficial owner, any coverage **we** provide will begin at the time **you** request coverage.
2. "**Auto**" means a land motor vehicle:
   a. of the private passenger, pickup body, or cargo van type;
   b. designed for operation principally upon public roads;
   c. with at least four wheels; and
   d. with a gross vehicle weight rating of 12,000 pounds or less, according to the manufacturer's specifications.

   However, "**auto**" does not include step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area.
3. "**Auto business**" means the business of selling, leasing, repairing, parking, storing, servicing, delivering or testing vehicles.
4. "**Bodily injury**" means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease.
5. "**Covered auto**" means:
   a. any **auto** or **trailer** shown on the **declarations page** for the coverages applicable to that **auto** or **trailer**;
   b. any **additional auto**;
   c. any **replacement auto**; or
   d. a **trailer** owned by **you**.
6. "**Declarations page**" means the document showing **your** coverages, limits of liability, **covered autos**, premium, and other policy-related information. The **declarations page** may also be referred to as the Auto Insurance Coverage Summary.
7. "**Occupying**" means in, on, entering or exiting.
8. "**Personal vehicle sharing program**" means a system or process, operated by a

1

business, organization, network, group, or individual subject to or a party to a written agreement, that facilitates the sharing of private passenger motor vehicles for use by individuals.

9. "**Property damage**" means physical damage to, destruction of, or loss of use of, tangible property.

10. "**Rated resident**" means a person residing in the same household as **you** at the time of the loss who is not a **relative**, but only if that person is both:
    a. listed in the "Drivers and household residents" section on the **declarations page**; and
    b. not designated as either an "Excluded" or a "List Only" driver.

11. "**Relative**" means a person residing in the same household as **you**, and related to **you** by blood, marriage or adoption, and includes a ward, stepchild, or foster child. **Your** unmarried dependent children temporarily away from home will qualify as a **relative** if they intend to continue to reside in **your** household.

12. "**Replacement auto**" means an **auto** that permanently replaces an **auto** shown on the **declarations page**. However, if the **auto** being replaced had coverage under Part IV—Damage To A Vehicle, such coverage will apply to the **replacement auto** only during the first 30 days after **you** become the actual or beneficial owner unless **you** notify **us** within that 30-day period that **you** want **us** to extend coverage beyond the initial 30 days. If the **auto** being replaced did not have coverage under Part IV—Damage To A Vehicle, such coverage may be added, but the **replacement auto** will have no coverage under Part IV until **you** notify **us** of the **replacement auto** and ask **us** to add the coverage.

13. "**Ride-sharing activity**" means the use of any vehicle to provide transportation of persons for any compensation or fee in connection with a **transportation network company** from the time a user logs on to, or signs in to, any online-enabled application, software, website or system until the time the user logs out of, or signs off of, any such online-enabled application, software, website or system, whether or not the user has accepted any passenger(s), including the time the user is on the way to pick up any passenger(s), or is transporting any passenger(s).

14. "**Trailer**" means a non-motorized trailer, including a farm wagon or farm implement, designed to be towed on public roads by an **auto**:
    a. while not being used for commercial purposes;
    b. while not being used as an office, store, or for display purposes; or
    c. while not being used as a passenger conveyance.

15. "**Transportation network company**" is an organization, sole proprietor, or any other entity that provides prearranged transportation services for compensation using an online-enabled application or platform to connect passengers with drivers using a personal vehicle. This definition does not include shared-expense carpooling.

16. "**We**," "**us**" and "**our**" mean the underwriting company providing the insurance, as shown on the **declarations page**.

17. "**You**" and "**your**" mean:
    a. a person shown as a named insured on the **declarations page**; and
    b. the spouse of a named insured if residing in the same household at the time of the loss.

**INSURING AGREEMENT—BODILY INJURY**

If **you** pay the premium for this coverage, **we** will pay damages for **bodily injury** for which an **insured person** becomes legally responsible because of an accident.

**INSURING AGREEMENT—PROPERTY DAMAGE**

If **you** pay the premium for this coverage, **we** will pay damages for **property damage** for which an **insured person** becomes legally responsible because of an accident.

Damages for **bodily injury** and **property damage** include prejudgment interest awarded against an **insured person**, where owed by law.

If **you** pay the premium for Bodily Injury Liability and Property Damage Liability, **we** will settle or defend, at **our** option, any claim for **bodily injury** or **property damage** covered by this Part I. **Our** duty to settle or defend ends after **we** have paid the applicable limit of liability for the accident that is the basis of the lawsuit. **Our** duty to settle or defend does not include any sanctions awarded or assessed against an **insured person** due to intentional misrepresentation or concealment committed by that **insured person** during the course of any lawsuit, associated discovery, or other proceedings.

If **you** pay the premium for Property Damage Liability only, **we** will settle or defend, at **our** option, any claim for **property damage** covered by this Part I. **Our** duty to settle or defend ends after **we** have paid the applicable limit of liability for the accident that is the basis of the lawsuit. **Our** duty to settle or defend does not include any sanctions awarded or assessed against an **insured person** due to intentional misrepresentation or concealment committed by that **insured person** during the course of any lawsuit, associated discovery, or other proceedings.

Satisfaction by an **insured person** of a judgment for **bodily injury** or **property damage** shall not be a condition precedent to the right or duty of **us** to make payment for such **bodily injury** or **property damage**.

**ADDITIONAL DEFINITION**

When used in this Part I:
"**Insured person**" means:
a. **you**, a **relative**, or a **rated resident** with respect to an accident arising out of the ownership, maintenance or use of an **auto** or a **trailer**;
b. any person with respect to an accident arising out of that person's use of a **covered auto** with the permission of **you**, a **relative**, or a **rated resident**;
c. any person or organization with respect only to vicarious liability for the acts or omissions of a person described in a. or b. above; and
d. any "Additional Interest" shown on the **declarations page** with respect only to its liability for the acts or omissions of a person described in a. or b. above.

3

In addition to **our** limit of liability, **we** will pay for an **insured person**:

1. all expenses **we** incur in the settlement of any claim or in the defense of an **insured person** in any lawsuit. This does not include attorney fees or sanctions awarded or assessed against an **insured person** unless they were taxed against an insured because the Company, while providing a defense, rejected an offer of judgment at or below the applicable limit of liability;
2. interest accruing after entry of judgment, until **we** have paid, offered to pay, or deposited in court, that portion of the judgment which does not exceed **our** limit of liability. This does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured person**;
3. the premium on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in an amount exceeding **our** limit of liability, and **we** have no duty to apply for or furnish these bonds;
4. up to \$250 for a bail bond required because of an accident resulting in **bodily injury** or **property damage** covered under this Part I. **We** have no duty to apply for or furnish this bond; and
5. reasonable expenses, including loss of earnings up to \$200 per day, incurred at **our** request.

## EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART I.

Coverage under this Part I, including **our** duty to defend, will not apply to any **insured person** for:

1. **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle or trailer while being used:
   a. to carry persons or property for compensation or a fee;
   b. for retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of magazines, newspapers, mail or food; or
   c. for **ride-sharing activity**.
   This exclusion does not apply to shared-expense car pools;
2. any liability assumed under any contract or agreement by **you** or a **relative**;
3. **bodily injury** to an employee of that **insured person** arising out of or within the course of employment. This exclusion does not apply to domestic employees if benefits are neither paid nor required to be provided under workers' compensation, disability benefits, or similar laws;
4. **bodily injury** or **property damage** arising out of an accident involving any vehicle while being maintained or used by a person while employed or engaged in any **auto business**. This exclusion does not apply to **you**, a **relative**, a **rated resident**, or an agent or employee of **you**, a **relative**, or a **rated resident**, when using a **covered auto**;
5. **bodily injury** or **property damage** arising out of the use of any vehicle, and resulting from, or sustained during practice or preparation for:
   a. any pre-arranged or organized racing, stunting, speed or demolition contest or activity by an **insured person**; or

4

course by an **insured person**;

6. **bodily injury** or **property damage** due to a nuclear reaction or radiation;
7. **bodily injury** or **property damage** for which insurance:
   a. is afforded under a nuclear energy liability insurance contract; or
   b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;
8. any obligation for which the United States Government is liable under the Federal Tort Claims Act. This exclusion will apply only to the damages that are in excess of the minimum limits of liability coverage required by the financial responsibility law of the state of Florida;
9. **bodily injury** or **property damage** caused by an intentional act of any **insured person**, or at the direction of any **insured person**, even if the actual injury or damage is different than that which was intended or expected. With respect to persons sustaining **bodily injury** or **property damage** who do not also qualify as **insured persons**, this exclusion will apply only to the damages that are in excess of the minimum limits of liability coverage required by the financial responsibility law of the state of Florida;
10. **property damage** to any property owned by, rented to, being transported by, used by, or in the charge of that **insured person**. This exclusion does not apply to a rented residence or a rented garage;
11. **bodily injury** to **you** or a **relative**;
12. **bodily injury** or **property damage** arising out of the ownership, maintenance, or use of any vehicle owned by **you** or furnished or available for **your** regular use, other than a **covered auto** for which this coverage has been purchased;
13. **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle owned by a **relative** or furnished or available for the regular use of a **relative**, other than a **covered auto** for which this coverage has been purchased. This exclusion does not apply to **your** maintenance or use of such vehicle;
14. **bodily injury** or **property damage** arising out of **your**, a **relative's**, or a **rated resident's** use of a vehicle, other than a **covered auto**, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle;
15. **bodily injury** or **property damage** arising out of the use of a **covered auto** while leased or rented to others or given in exchange for any compensation, including while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of a **covered auto** by **you**, a **relative**, or a **rated resident**, and will only apply to the damages that are in excess of the minimum limits of liability coverage required by the financial responsibility law of the state of Florida;
16. punitive or exemplary damages; or
17. **bodily injury** or **property damage** caused by, or reasonably expected to result from, a criminal act or omission, excluding moving traffic violations, of any **insured person**. This exclusion applies regardless of whether that **insured person** is actually charged with, or convicted of, a crime. With respect to persons sustaining **bodily injury** or **property damage** who do not also qualify as **insured persons**,

5

this exclusion will apply only to the damages that are in excess of the minimum limits of liability coverage required by the financial responsibility law of the state of Florida.

## LIMITS OF LIABILITY

The limit of liability shown on the **declarations page** for liability coverage is the most **we** will pay regardless of the number of:
1. claims made;
2. **covered autos**;
3. **insured persons**;
4. lawsuits brought;
5. vehicles involved in the accident; or
6. premiums paid.

If **your declarations page** shows a split limit:
1. the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person resulting from any one accident;
2. subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident; and
3. the amount shown for "property damage" is the most **we** will pay for the total of all **property damage** resulting from any one accident.

The "each person" limit of liability applies to the total of all claims made for **bodily injury** to a person and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death, if recoverable under the applicable law.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any one accident. However, without changing this limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

No one is entitled to duplicate payments for the same elements of damages.

Any payment to a person under this Part I for **bodily injury** will be reduced by:
1. any payment made to that person for **bodily injury** under Part III—Uninsured Motorist Coverage; and
2. any amounts that are paid or payable to that person as personal injury protection benefits.

An **auto** and attached **trailer** are considered one **auto**. Therefore, the limits of liability will not be increased for an accident involving an **auto** that has an attached **trailer**.

## FINANCIAL RESPONSIBILITY LAWS

When **we** certify this policy as proof of financial responsibility, this policy will comply with the law to the extent required. The **insured person** must reimburse **us** if **we** make a payment that **we** would not have made if this policy was not certified as proof of financial responsibility.

## OTHER INSURANCE

If there is any other applicable liability insurance or bond, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. Any insurance **we** provide for a vehicle or trailer, other than a **covered auto**, will be excess over any other collectible insurance, self-insurance, or bond.

However, when **you**, a **relative**, or a **rated resident** rent or lease an **auto**, the liability coverage provided by the lessor's policy shall be primary unless the rental or lease agreement includes a provision in the form specified in Florida Statute §627.7263, as amended, stating that the lessee or rentee's liability insurance and personal injury protection insurance shall be primary. If the rental or lease agreement includes such a provision, **our** duty to pay damages under this Part I, and **our** duty to defend **you**, a **relative**, or a **rated resident** under this Part I, shall be primary to any liability coverage provided by the lessor or owner for operation of that **auto** by **you**, a **relative**, or a **rated resident**. **We** have no duty to defend the lessor or owner of that **auto** under this Part I.

## OUT-OF-STATE COVERAGE

If an accident to which this Part I applies occurs in any state, territory or possession of the United States of America or any province or territory of Canada, other than the one in which a **covered auto** is principally garaged, and the state, province, territory or possession has:
1. a financial responsibility or similar law requiring limits of liability for **bodily injury** or **property damage** higher than the limits shown on the **declarations page**, this policy will provide the higher limits; or
2. a compulsory insurance or similar law requiring a non-resident to maintain insurance whenever the non-resident uses an **auto** in that state, province, territory or possession, this policy will provide the greater of:
    a. the required minimum amounts and types of coverage; or
    b. the limits of liability under this policy.

**INSURING AGREEMENT**

If **you** pay the premium for this coverage, **we** will pay benefits that an **insured person** is entitled to receive pursuant to the Florida Motor Vehicle No-Fault Law, as amended, because of **bodily injury**:
1.  caused by an **accident**;
2.  sustained by an **insured person**; and
3.  arising out of the ownership, maintenance or use of a **motor vehicle**.

Personal Injury Protection Coverage benefits consist of:
1.  **medical benefits**;
2.  **disability benefits**; and
3.  **death benefits**.

**ADDITIONAL DEFINITIONS**

When used in this Part II(A):
1.  "**Death benefits**" means benefits of $5,000 payable per individual if an **insured person** dies because of injury covered under this Part II(A).
2.  "**Disability benefits**" means 60 percent of any **work loss** per **insured person** from inability to work proximately caused by the injury sustained by the **insured person**. **Disability benefits** also include all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those services that, but for the **bodily injury**, the **insured person** would have performed without income for the benefit of his or her household.
3.  "**Emergency medical condition**" means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:
    a.  serious jeopardy to patient health;
    b.  serious impairment to bodily functions; or
    c.  serious dysfunction of any bodily organ or part.
4.  "**Insured person**" means:
    a.  **you** or any **resident relative** sustaining **bodily injury** while **occupying** a **motor vehicle**, or when struck by a **motor vehicle** while not **occupying** a self-propelled vehicle;
    b.  any person sustaining **bodily injury** while **occupying** a **covered auto**; or
    c.  any person, if a resident of Florida, sustaining **bodily injury** when struck by a **covered auto** while not **occupying** a self-propelled vehicle.
    For purposes of this definition, "**covered auto**" includes an attached trailer or semi-trailer designed for use with such vehicle.
5.  "**Medical benefits**" means 80 percent of all reasonable expenses incurred for **medically necessary** medical, surgical, x-ray, dental and rehabilitative services, including prosthetic devices and **medically necessary** ambulance, hospital and

8

**cal benefits** are limited to: 1) services and care received within the initial 14 days after the motor vehicle accident, or 2) follow-up services and care received beyond the initial 14 days after the motor vehicle accident if services and care have been previously received within the initial 14 days after the motor vehicle accident, and a referral for more services and care has been provided by a statutorily authorized provider, and the follow-up services and care are consistent with the underlying medical diagnosis. **Medical benefits** provide reimbursement for: 1) initial services and care that are lawfully provided, supervised, ordered, or prescribed by a physician licensed under chapter 458 or chapter 459, a dentist licensed under chapter 466, or a chiropractic physician licensed under chapter 460 or that are provided in a hospital or in a facility that owns, or is wholly owned by, a hospital. Initial services and care may also be provided by a person or entity licensed under part III of chapter 401 which provides emergency transportation and treatment, or 2) upon referral by a provider described in subparagraph 1), follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to subparagraph 1) which may be provided, supervised, ordered, or prescribed only by a physician licensed under chapter 458 or chapter 459, a chiropractic physician licensed under chapter 460, a dentist licensed under chapter 466, or, to the extent permitted by applicable law and under the supervision of such physician, osteopathic physician, chiropractic physician, or dentist, by a physician assistant licensed under chapter 458 or chapter 459 or an advanced registered nurse practitioner licensed under chapter 464. Follow-up services and care may also be provided by the following persons or entities: a) hospital or ambulatory surgical center licensed under chapter 395, b) an entity wholly owned by one or more physicians licensed under chapter 458 or chapter 459, chiropractic physicians licensed under chapter 460, or dentists licensed under chapter 466 or by such practitioners and the spouse, parent, child, or sibling of such practitioners, c) an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals, d) a physical therapist licensed under chapter 486, based upon a referral by a provider described in this subparagraph, e) a health care clinic licensed under part X of chapter 400 which is accredited by an accrediting organization whose standards incorporate comparable regulations required by this state, or (i) has a medical director licensed under chapter 458, chapter 459, or chapter 460; (ii) has been continuously licensed for more than 3 years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and (iii) provides at least four of the following medical specialties: (A) General medicine, (B) Radiography, (C) Orthopedic medicine, (D) Physical medicine, (E) Physical therapy, (F) Physical rehabilitation, (G) Prescribing or dispensing outpatient prescription medication, (H) Laboratory services. **Medical benefits** do not include massage, as defined in FL. St. 480.033, or acupuncture, as defined in FL. St. 457.102, regardless of the person, entity or licensee providing the massage or acupuncture, and a licensed massage therapist or licensed acupuncturist will not be reimbursed for **medical benefits**.

6. "**Medically necessary**" refers to a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness,

    a. in accordance with generally accepted standards of medical practice;

    b. clinically appropriate in terms of type, frequency, extent, site, and duration; and

    c. not primarily for the convenience of the patient, physician, or other health care provider.

7. "**Motor vehicle**" means any self-propelled vehicle with four or more wheels which is of a type both designed and required to be licensed for use on the highways of the State of Florida and any trailer or semi-trailer designed for use with such vehicle. A **motor vehicle** does not include a mobile home or any **motor vehicle** which is used in mass transit, other than public school transportation, and designed to transport more than five passengers exclusive of the operator of the **motor vehicle** and which is owned by a municipality, a transit authority, or a political subdivision of the state.

8. "**Owner**" means a person who holds the legal title to a **motor vehicle**, or, in the event a **motor vehicle** is the subject of a security agreement or lease with an option to purchase with the debtor or lessee having the right to possession, then the debtor or lessee shall be deemed the **owner**.

9. "**Resident relative**" means a relative of any degree by blood or by marriage, or who is adopted, a foster child, or a ward of the state, and who usually makes his or her home in the same family unit, whether or not temporarily living elsewhere.

10. "**Work loss**" means loss of gross income and loss of earning capacity.

## EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART II(A).

Coverage under this Part II(A) does not apply to **bodily injury**:

1. sustained by **you** or a **resident relative** while **occupying** another **motor vehicle** owned by **you** and not insured under this policy;

2. sustained by any person operating a **covered auto** without **your** express or implied consent;

3. to any injured person, if such person's conduct contributed to his or her **bodily injury** under any of the following circumstances:

    a. causing **bodily injury** to himself or herself intentionally; or

    b. sustaining **bodily injury** while committing a felony. However, whenever an insured is charged with such conduct, the required 30-day payment provision shall be held in abeyance, and the insurer shall withhold payment of any personal injury protection benefits pending the outcome of the case at the trial level. If the charge is nolle prossed or dismissed or the insured is acquitted, the 30-day payment provision shall run from the date the insurer is notified of such action;

4. sustained by any person, other than **you**, if such person is the **owner** of a **motor vehicle** with respect to which security is required under the Florida Motor Vehicle No-Fault Law, as amended;

5. sustained by any person, other than **you** or a **resident relative**, who is entitled to personal injury protection benefits from the insurer or **owner** of a **motor vehicle** that is not a **covered auto** under this policy;

as a residence or premises;

7. with respect to **work loss**, if such **bodily injury** is sustained by **you**, and if a named insured has elected to exclude **work loss** for either **you**, or **your** dependent resident relatives, as indicated on the **declarations page**;

8. with respect to **work loss**, if such **bodily injury** is sustained by a dependent resident relative, and if a named insured has elected to exclude **work loss** for **you** and dependent resident relatives, as indicated on the **declarations page**; or

9. sustained by any person while **occupying** a **covered auto** while it is being used for **ride-sharing activity**.

**LIMIT OF LIABILITY**

The limit of liability shown on the **declarations page** for Personal Injury Protection is the most **we** will pay for each **insured person** injured in any one accident, regardless of the number of:

1. claims made;
2. **covered autos**;
3. **insured persons**;
4. lawsuits brought;
5. vehicles involved in the accident; or
6. premiums paid.

If no **emergency medical condition** exists or no determination has been made, the maximum reimbursement for **medical benefits** and **disability benefits** is limited to $2,500. If an **emergency medical condition** exists, the insured is eligible to receive up to $10,000 in **medical benefits** and **disability benefits**. That determination can affirmatively be made only by a physician or physician assistant licensed under chapter 458 or 459, a dentist licensed under chapter 466, or an advanced registered nurse practitioner licensed under chapter 464, and further can be made only if no physician or physician assistant licensed under chapter 458 or 459, no chiropractic physician licensed under chapter 460, no dentist licensed under chapter 466, no advanced registered nurse practitioner licensed under chapter 464, no physical therapist licensed under chapter 486, and no person or entity licensed under part III of chapter 401 who provides emergency transportation and treatment has determined that the injured person did not have an **emergency medical condition**. This provision is applicable to all claims without regard to the identity, or status, of the entity seeking reimbursement, including those claims submitted by government entities possessing a statutory right to present claims under this Part II(A).

Benefits received under any workers' compensation law shall be credited against the benefits provided under this Part II(A). Any deductible elected by a named insured under Personal Injury Protection Coverage applies to those persons indicated as subject to a deductible on the **declarations page**. Any deductible that applies to the named insured shall apply to all persons listed as a named insured on the **declarations page** and any spouse of a named insured. When a deductible applies, the deductible will be applied to 100 percent of the expenses and losses covered under Personal Injury Protection Coverage. A separate $5,000 benefit limit is reserved exclusively for **death benefits**. However, the deductible shall not be applied to reduce **death benefits**.

**OTHER INSURANCE**

If there is other applicable personal injury protection coverage for the same injury to
any one **insured person**, the most the **insured person** may recover is the maximum
amount payable for personal injury protection benefits under the Florida Motor Vehicle
No-Fault Law, as amended. If there is other applicable personal injury protection cov-
erage, and **we** make a payment under this Part II(A), **we** are entitled to recover from
each of the other insurers an equitable pro rata share of the benefits paid and expenses
incurred in processing the claim.

If an **insured person** sustains **bodily injury** while **occupying**, or through being struck
by, a **motor vehicle** which is rented or leased, the liability coverage and the personal
injury protection coverage provided by the lessor's policy shall be primary unless the
rental or lease agreement includes a provision which specifies that the valid and collect-
ible liability insurance and personal injury protection insurance of any authorized rental
or leasing driver is primary for the limits of liability and personal injury protection cover-
age required by §§ 324.021(7) and 627.736, Florida Statutes.

**CONDITIONS**

In addition to the duties set forth in Part VI of this policy and the provisions set forth in
Part VII of this policy, the following conditions apply to coverage afforded under this Part
II(A).

**Policy Period and Territory**. The coverage under this Part II(A) applies only to acci-
dents which occur during the policy period:
1. in the State of Florida; and
2. with respect to **you** or a **resident relative**, while **occupying** a **covered auto** out-
   side the State of Florida but within the United States of America, its territories or
   possessions, or Canada; and
3. with respect to **you**, while **occupying** a **motor vehicle** owned by a **resident rela-
   tive**, and for which security is maintained under the Florida Motor Vehicle No-Fault
   Law, as amended, outside the State of Florida but within the United States of Amer-
   ica, its territories or possessions, or Canada.

**Duties in Case of an Accident or Loss**. As a condition precedent to obtaining Per-
sonal Injury Protection Coverage, a person must:
1. cooperate with **us** in any matter concerning a claim or lawsuit;
2. provide any written proof of loss **we** may reasonably require;
3. allow **us** to take signed and recorded statements, including sworn statements and
   examinations under oath, which **we** may conduct outside the presence of **you** or
   any other person claiming coverage, and answer all reasonable questions **we** may
   ask and provide any documents, records, or other tangible items that **we** request,
   when, where, and as often as **we** may reasonably require; and
4. authorize **us** to obtain medical and other records.

Examination Under Oath. An insured seeking benefits must comply with the terms of the policy, which include, but are not limited to, submitting to an examination under oath. The scope of questioning during the examination under oath is limited to relevant information or information that could reasonably be expected to lead to relevant information. Compliance with this paragraph is a condition precedent to receiving benefits.

**Refusal to Submit to Medical Examination**. If a person making a claim under this Part II(A) unreasonably refuses to submit to or fails to appear at a medical examination required by **us**, **we** shall not be liable for further payments under this Part II(A). A refusal to submit to or failure to appear at two examinations raises a rebuttable presumption that the refusal or failure was unreasonable.

**Right of Reimbursement from Owner or Insurer of Commercial Motor Vehicle**. If **we** make a payment under this Part II(A) to any person sustaining **bodily injury** while **occupying** a commercial **motor vehicle**, as defined under the Florida Motor Vehicle No-Fault Law, as amended, or when struck by a commercial **motor vehicle** while not **occupying** a self-propelled vehicle, **we** shall have a right of reimbursement, to the extent of **our** payment, against the owner of the commercial **motor vehicle** or the owner's insurer. This right of reimbursement shall not apply from the owners or registrants of **motor vehicles** being used as taxicabs.

**Unreasonable or Unnecessary Medical Benefits.** If an **insured person** incurs **medical benefits** that **we** deem to be unreasonable or unnecessary, **we** may refuse to pay for those **medical benefits** and contest them.

**We** will determine to be unreasonable any charges incurred that exceed the maximum charges set forth in Section 627.736 (5)(a)(1) (a through f) of the Florida Motor Vehicle No-Fault Law, as amended. Pursuant to Florida law, **we** will limit reimbursement to a maximum of, and pay an amount not to exceed 80 percent of the following schedule of maximum charges:

a. for emergency transport and treatment by providers licensed under Chapter 401 of the Florida Statutes, 200 percent of Medicare;

b. for emergency services and care provided by a hospital licensed under Chapter 395 of the Florida Statutes, 75 percent of the hospital's usual and customary charges;

c. for emergency services and care as defined by Section 395.002 of the Florida Statutes, provided in a facility licensed under Chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community;

d. for hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services;

e. for hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services; and

13

for all other medical services, supplies and care, 100 percent of the allowable amount under the participating physicians fee schedule of Medicare Part B, except as follows:

(1) for services, supplies and care provided by ambulatory surgical centers and clinical laboratories, 200 percent of the allowable amount under Medicare Part B; and

(2) for durable medical equipment, 200 percent of the allowable amount under "The Durable Medical Equipment Prosthetics/Orthotics and Supplies" fee schedule of Medicare Part B.

However, if such services, supplies or care is not reimbursable under Medicare Part B, as provided in this subsection f., **we** will limit reimbursement to a maximum of, and pay an amount not to exceed 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under Section 440.13 of the Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies or care is provided. Services, supplies or care that is not reimbursable under Medicare or workers' compensation will not be reimbursed by **us**.

The applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the service year in which the services, supplies or care is rendered and for the area in which such services, supplies or care is rendered. This applicable fee schedule or payment limitation applies to service, supplies, or care rendered during that service year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the allowable amount under the applicable schedules of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B. For purposes of this paragraph, "service year" means the period from March 1 through the end of February of the following year.

In determining the appropriate reimbursement under the applicable Medicare fee schedule, all reasonable, **medically necessary**, and covered charges for services, supplies and care submitted by physicians, non-physician practitioners, or any other provider will be subject to the Center for Medicare Services (CMS) coding policies and payment methodologies, including applicable modifiers. The CMS policies include, but are not limited to: coding edits, both mutually exclusive and inclusive, payment limitations, and coding guidelines subject to the National Correct Coding Initiative (NCCI), Hospital Outpatient Prospective Payment System (OPPS), Multiple Procedure Payment Reduction (MPPR), and Multiple Surgery Reduction Rules (MSRR).

**We** will reduce any payment to a medical provider under this Part II(A) by any amounts **we** deem to be unreasonable **medical benefits**. However, the **medical benefits** shall provide reimbursement only for such services, supplies and care that are lawfully rendered, supervised, ordered or prescribed. Any reductions taken will not affect the rights of an **insured person** for coverage under this Part II(A). Whenever a medical provider agrees to a reduction of **medical benefits** charged, any co-payment owed by an **insured person** will also be reduced.

negotiated medical provider agreement to which **we** have access. However, if an **insured person** chooses not to use such a provider with whom **we** have a negotiated agreement, **we** will not use that negotiated rate to establish what is considered reasonable for that area.

The **insured person** shall not be responsible for payment of any reductions applied by **us**. If a medical provider disputes an amount paid by **us**, **we** will be responsible for resolving such dispute. If a lawsuit is initiated against an **insured person** as a result of the reduction of a medical bill by **us**, other than reductions taken pursuant to FL St. 627.736 (5)(a)(1) (a through f), **we** will provide the **insured person** with a legal defense by counsel of **our** choice, and pay any resulting judgment. The **insured person** must cooperate with **us** in the defense of any claim or lawsuit. If **we** ask an **insured person** to attend hearings or trials, **we** will pay up to $200 per day for loss of wages or salary. **We** will also pay other reasonable expenses incurred at **our** request. Said payments will not operate to reduce the policy limits of liability.

**Notice That Policy Limits Have Been Reached.** Where a dispute exists between the **insured person** and **us**, or between a person or entity holding a valid assignment and **us**, upon request, **we** will notify the **insured person** or the assignee that the policy limits have been reached within 15 days after the limits have been reached.

**Rejection or Partial Payment due to Error in Claim.** Pursuant to FL St. 627.736(4) (b)(3), if **we** pay only a portion of a claim or reject a claim due to an alleged error in the claim, **we** will, at the time of the partial payment or rejection, provide an itemized specification or explanation of benefits due to the specified error. Upon receiving the specification or explanation, the person making the claim, at the person's option and without waiving any other legal remedy for payment, will have 15 days to submit a revised claim, which shall be considered a timely submission of written notice of a claim.

**Reasonable Belief of Fraud.** Pursuant to FL St. 627.736(4)(h), benefits are not due or payable to or on the behalf of an **insured person** if that person has committed, by a material act or omission, insurance fraud relating to coverage under this Part II(A), if the fraud is admitted to in a sworn statement by the **insured person** or established in a court of competent jurisdiction. Any insurance fraud voids all coverage arising from the claim related to such fraud under this Part II(A) of the **insured person** who committed the fraud, irrespective of whether a portion of the **insured person's** claim may be legitimate, and any benefits paid before the discovery of the fraud is recoverable by us in its entirety from the person who committed insurance fraud. The prevailing party is entitled to its costs and attorney fees in any action we may bring to enforce our right of recovery under this paragraph.

Pursuant to FL St. 627.736(4)(i), if **we** have a reasonable belief that a fraudulent insurance act, for the purposes of FL St. 626.989 or FL St. 817.234, has been committed, **we** will notify the **insured person**, in writing, within 30 days after submission of the claim that the claim is being investigated for suspected fraud. Beginning at the end of the initial 30-day period, **we** will have an additional 60 days to conduct a fraud

no later than 90 days after the submission of the claim, **we** will deny the claim or pay the claim with simple interest as provided by law. Interest shall be assessed from the day the claim was submitted until the day the claim is paid. All claims denied for suspected fraudulent insurance acts shall be reported to the Division of Investigative and Forensic Services.

**Log of Benefits Paid. We** will create and maintain for each **insured person** a log of personal injury protection benefits paid. If litigation is commenced, then **we** will provide to the **insured person** a copy of the log within 30 days after receiving a request for same.

#### EXTENDED PERSONAL INJURY PROTECTION COVERAGE

If **you** have purchased Extended Personal Injury Protection Coverage, all other provisions of the policy apply with the exception that, as applied to **bodily injury** sustained by **you** or a **resident relative**, the definitions of "**disability benefits**" and "**medical benefits**" under this Part II(A) are deleted and replaced by the following:

"**Disability benefits**" means 80 percent of any **work loss** per **insured person** from inability to work proximately caused by the injury sustained by the **insured person**. **Disability benefits** also include all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those services that, but for the **bodily injury**, the **insured person** would have performed without income for the benefit of his or her household.

"**Medical benefits**" means all reasonable expenses incurred for **medically necessary** medical, surgical, x-ray, dental and rehabilitative services, including prosthetic devices and **medically necessary** ambulance, hospital and nursing services. All of the following statutory references are to Florida law. **Medical benefits** are limited to: 1) services and care received within the initial 14 days after the motor vehicle accident, or 2) follow-up services and care received beyond the initial 14 days after the motor vehicle accident if services and care have been previously received within the initial 14 days after the motor vehicle accident, and a referral for more services and care has been provided by a statutorily authorized provider, and the follow-up services and care are consistent with the underlying medical diagnosis. **Medical benefits** provide reimbursement for: 1) initial services and care that are lawfully provided, supervised, ordered, or prescribed by a physician licensed under chapter 458 or chapter 459, a dentist licensed under chapter 466, or a chiropractic physician licensed under chapter 460 or that are provided in a hospital or in a facility that owns, or is wholly owned by, a hospital. Initial services and care may also be provided by a person or entity licensed under part III of chapter 401 which provides emergency transportation and treatment, or 2) upon referral by a provider described in subparagraph 1), follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to subparagraph 1) which may be provided, supervised, ordered, or prescribed only by a physician licensed under chapter 458 or chapter 459, a chiropractic physician licensed under chapter 460, a

dentist licensed under Chapter 466, to the extent permitted by applicable law and under the supervision of such physician, osteopathic physician, chiropractic physician, or dentist, by a physician assistant licensed under chapter 458 or chapter 459 or an advanced registered nurse practitioner licensed under chapter 464. Follow-up services and care may also be provided by the following persons or entities: a) hospital or ambulatory surgical center licensed under chapter 395, b) an entity wholly owned by one or more physicians licensed under chapter 458 or chapter 459, chiropractic physicians licensed under chapter 460, or dentists licensed under chapter 466 or by such practitioners and the spouse, parent, child, or sibling of such practitioners, c) an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals, d) a physical therapist licensed under chapter 486, based upon a referral by a provider described in this subparagraph, e) a health care clinic licensed under part X of chapter 400 which is accredited by an accrediting organization whose standards incorporate comparable regulations required by this state, or (i) has a medical director licensed under chapter 458, chapter 459, or chapter 460; (ii) has been continuously licensed for more than 3 years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and (iii) provides at least four of the following medical specialties: (A) General medicine, (B) Radiography, (C) Orthopedic medicine, (D) Physical medicine, (E) Physical therapy, (F) Physical rehabilitation, (G) Prescribing or dispensing outpatient prescription medication, (H) Laboratory services. **Medical benefits** do not include massage, as defined in FL. St. 480.033, or acupuncture, as defined in FL. St. 457.102, regardless of the person, entity or licensee providing the massage or acupuncture, and a licensed massage therapist or licensed acupuncturist will not be reimbursed for **medical benefits**.

### PART II(B)—MEDICAL PAYMENTS COVERAGE

**INSURING AGREEMENT**

If **you** pay the premium for this coverage, **we** will pay the reasonable expenses incurred for necessary **medical services** received within three years from the date of a **motor vehicle** accident because of **bodily injury**:
1. sustained by an **insured person**; and
2. caused by that **motor vehicle** accident.

**We**, or someone on **our** behalf, will determine:
1. whether the expenses for **medical services** are reasonable; and
2. whether the **medical services** are necessary.

There is no coverage under this Part II(B) for:
1. mileage costs for use of a personal vehicle;
2. any interest charges;
3. any **medical services** if the **insured person** does not receive initial **medical services** and care from an initial services provider within 14 calendar days after the **motor vehicle** accident;

17

vices, or equipment that provide mechanical or electrical massage with or without heat;

5. acupuncture services, including all adjunctive therapies and diagnostic techniques, including herbs, rubs and oils, aromatherapy, cupping, dieting, and other oriental exercises and stretching techniques; or

6. any **medical services**, supplies, or care provided by a massage therapist or an acupuncturist.

## ADDITIONAL DEFINITIONS

When used in this Part II(B):

1. "**Insured person**" means **you**, a **relative**, or a **rated resident**:
   a. while **occupying** an **auto**; or
   b. when struck by a **motor vehicle** or a trailer while not **occupying** a self-propelled motorized vehicle.

2. "**Medical services**" means all reasonable expenses incurred for medically necessary medical, surgical, x-ray, dental and rehabilitative services, including prosthetic devices and medically necessary ambulance, hospital and nursing services. All of the following statutory references are to Florida law. **Medical services** are limited to: 1) services and care received within the initial 14 days after the motor vehicle accident, or 2) follow-up services and care received beyond the initial 14 days after the motor vehicle accident if services and care has been previously received within the initial 14 days after the motor vehicle accident, and a referral for more services and care has been provided by an authorized provider as defined under the Florida No Fault law, as amended, and the follow-up services and care are consistent with the underlying medical diagnosis. **Medical services** provide reimbursement for: 1) initial services and care that are lawfully provided, supervised, ordered, or prescribed by a physician licensed under chapter 458 or chapter 459, a dentist licensed under chapter 466, or a chiropractic physician licensed under chapter 460 or that are provided in a hospital or in a facility that owns, or is wholly owned by, a hospital. Initial services and care may also be provided by a person or entity licensed under part III of chapter 401 which provides emergency transportation and treatment, or 2) upon referral by a provider described in subparagraph 1), follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to subparagraph 1) which may be provided, supervised, ordered, or prescribed only by a physician licensed under chapter 458 or chapter 459, a chiropractic physician licensed under chapter 460, a dentist licensed under chapter 466, or, to the extent permitted by applicable law and under the supervision of such physician, osteopathic physician, chiropractic physician, or dentist, by a physician assistant licensed under chapter 458 or chapter 459 or an advanced registered nurse practitioner licensed under chapter 464. Follow-up services and care may also be provided by the following persons or entities: a) hospital or ambulatory surgical center licensed under chapter 395, b) an entity wholly owned by one or more physicians licensed under chapter 458 or chapter 459, chiropractic physicians licensed under chapter 460, or dentists licensed under chapter 466 or by such practitioners and the spouse, parent, child, or sibling of such practitioners, c) an entity that owns or is

18

licensed under chapter 486, based upon a referral by a provider described in this subparagraph, e) a health care clinic licensed under part X of chapter 400 which is accredited by an accrediting organization whose standards incorporate comparable regulations required by this state, or (i) has a medical director licensed under chapter 458, chapter 459, or chapter 460; (ii) has been continuously licensed for more than 3 years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and (iii) provides at least four of the following medical specialties: (A) General medicine, (B) Radiography, (C) Orthopedic medicine, (D) Physical medicine, (E) Physical therapy, (F) Physical rehabilitation, (G) Prescribing or dispensing outpatient prescription medication, (H) Laboratory services. **Medical services** do not include massage, as defined in FL. St. 480.033, or acupuncture, as defined in FL. St. 457.102, regardless of the person, entity or licensee providing the massage or acupuncture, and a licensed massage therapist or licensed acupuncturist will not be reimbursed for **medical services**.

3. "**Motor vehicle**" means a land motor vehicle designed for use principally on public roads.

### EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART II(B).

Coverage under this Part II(B) will not apply to **bodily injury**:

1. sustained by any person while **occupying** a **covered auto** while it is being used:
   a. to carry persons or property for compensation or a fee;
   b. for retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of magazines, newspapers, mail or food; or
   c. for **ride-sharing activity**.
   This exclusion does not apply to shared-expense car pools;
2. arising out of an accident involving a vehicle while being maintained or used by a person while employed or engaged in any **auto business**. This exclusion does not apply to **you**, a **relative**, a **rated resident**, or an agent or employee of **you**, a **relative**, or a **rated resident**, when using a **covered auto**;
3. to any person resulting from, or sustained during practice or preparation for:
   a. any pre-arranged or organized racing, stunting, speed or demolition contest or activity; or
   b. any driving activity conducted on a permanent or temporary racetrack or racecourse;
4. due to a nuclear reaction or radiation;
5. for which insurance:
   a. is afforded under a nuclear energy liability insurance contract; or
   b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;
6. for which the United States Government is liable under the Federal Tort Claims Act;
7. sustained by any person while **occupying** any vehicle or trailer while located for use as a residence or premises;
8. if workers' compensation benefits are available for the **bodily injury**;

19

     sustained by any person while **occupying** or when struck by any vehicle owned by **you** or furnished or available for **your** regular use, other than a **covered auto** for which this coverage has been purchased;

10. sustained by any person while **occupying** or when struck by any vehicle owned by a **relative** or furnished or available for the regular use of a **relative**, other than a **covered auto** for which this coverage has been purchased. This exclusion does not apply to **you**;

11. to **you**, a **relative**, or a **rated resident,** while **occupying** any vehicle, other than a **covered auto**, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle;

12. to any person while **occupying** a **covered auto** while leased or rented to others or given in exchange for any compensation, including while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of a **covered auto** by **you**, a **relative**, or a **rated resident**;

13. caused directly or indirectly by:
    a. war (declared or undeclared) or civil war;
    b. warlike action by any military force of any government, sovereign or other authority using military personnel or agents. This includes any action taken to hinder or defend against an actual or expected attack; or
    c. insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these acts;

14. caused directly or indirectly by any accidental or intentional discharge, dispersal, or release of radioactive or nuclear material;

15. caused by, or reasonably expected to result from, a criminal act or omission of an **insured person**. This exclusion applies regardless of whether the **insured person** is actually charged with, or convicted of, a crime. This exclusion does not apply to moving traffic violations; or

16. for which coverage is not afforded under Part II(A)—Personal Injury Protection for any reason. This exclusion does not apply to **medical services** covered under Part II(A) but not paid solely due to:
    a. the application of the statutory 80 percent reimbursement limitation;
    b. the exhaustion of all applicable personal injury protection coverage; or
    c. the $2,500 limit of liability under Part II(A) for non-emergency medical conditions.

## LIMITS OF LIABILITY

The limit of liability shown on the **declarations page** for Medical Payments Coverage is the most **we** will pay for each **insured person** injured in any one accident, regardless of the number of:

1. claims made;
2. **covered autos**;
3. **insured persons**;
4. lawsuits brought;
5. vehicles involved in the accident; or
6. premiums paid.

of damages.

Any amount payable to an **insured person** under this Part II(B) will be reduced by any amount paid or payable for the same expense under Part I—Liability To Others or Part III—Uninsured Motorist Coverage.

If multiple auto policies issued by **us** are in effect for **you**, **we** will pay no more than the highest limit of liability for this coverage available under any one policy.

Any amounts payable for **medical services** to an **insured person** under this Part II(B) shall be excess over any personal injury protection coverage paid or payable under Part II(A)—Personal Injury Protection or which would be available but for the application of a deductible. This means that subject to the limit of liability shown on the **declarations page**, **we** will pay under this Part II(B) only for expenses that:

1. are the portion of any claim for **medical benefits** otherwise covered but not payable under Part II(A)—Personal Injury Protection due to coinsurance under that part. This is the 20 percent of reasonable expenses left over after application of the 80 percent limitation in the Part II(A) definition of **medical benefits**; or
2. exceed the **medical benefits** paid under Part II(A).

**We** will not provide reimbursement for any **medical services**, care, or supplies that are not required to be reimbursed under the Florida Motor Vehicle No-Fault Law. However, **we** will not deny reimbursement under this Part II(B) solely because charges for a non-emergency medical condition exceed the \$2,500 limit of liability for such conditions under Part II(A).

Coverage under this Part II(B) shall not be available to pay any deductible for personal injury protection coverage.

**UNREASONABLE OR UNNECESSARY MEDICAL EXPENSES**

If an **insured person** incurs expenses for **medical services** that **we** deem to be unreasonable or unnecessary, **we** may refuse to pay for those expenses and contest them. **We** will determine to be unreasonable any charges that **we** would determine to be unreasonable under the Unreasonable Or Unnecessary Medical Benefits provision in Part II(A)—Personal Injury Protection.

**We** have the right under this Part II(B) to limit reimbursement in accordance with any negotiated medical provider agreement to which **we** have access. The **insured person** shall not be responsible for any reduction applied by **us**. If a medical provider disputes an amount paid by **us** under this provision, **we** will be responsible for resolving such disputes.

21

expenses for **medical services** that **we** deem to be unreasonable or unnecessary, **we** will pay any resulting defense costs, and any resulting judgment against the **insured person**, subject to the limit of liability for this coverage. **We** will choose the counsel. **We** will also pay reasonable expenses, including loss of earnings up to $200 per day, incurred at **our** request. **We** will not pay any sanctions awarded or assessed against an **insured person** due to intentional misrepresentation or concealment committed by that **insured person** during the course of any lawsuit, associated discovery, or other proceedings.

### OTHER INSURANCE

If there is other applicable **auto** medical payments insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for an **insured person occupying** a vehicle or trailer, other than a **covered auto**, will be excess over any other **auto** insurance providing payments for **medical services**.

### PART III—UNINSURED MOTORIST COVERAGE

### INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay for damages, other than punitive or exemplary damages, that an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury**:
1. sustained by an **insured person**;
2. caused by an accident; and
3. arising out of the ownership, maintenance or use of an **uninsured motor vehicle**.

**We** will not pay for damages consisting of pain, suffering, mental anguish, or inconvenience unless the injury or disease consists in whole or in part of:
1. significant and permanent loss of an important bodily function;
2. permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement;
3. significant and permanent scarring or disfigurement; or
4. death;

as described in section 627.737(2) of the Florida Motor Vehicle No-Fault Law, as amended.

An **insured person** must notify **us** in writing by certified or registered mail at least 30 days before entering into any settlement with the owner or operator of an **uninsured motor vehicle**, or that person's liability insurer. In order to preserve **our** right of subrogation, **we** may elect to pay any sum offered in settlement by, or on behalf of, the owner or operator of the **uninsured motor vehicle**. If **we** do this, **you** agree to assign to **us** all subrogation rights that **you** have against the owner or operator of the **uninsured motor vehicle**.

Any judgment settled for damages against an owner/operator of an **uninsured motor vehicle** that arises out of a lawsuit brought without **our** written consent is not binding on **us**.

## ADDITIONAL DEFINITIONS

When used in this Part III:

1. "**Insured person**" means:
   a. **you**, a **relative**, or a **rated resident**;
   b. any person while operating a **covered auto** with the permission of **you**, a **relative**, or a **rated resident**;
   c. any person **occupying**, but not operating, a **covered auto**; and
   d. any person who is entitled to recover damages covered by this Part III because of **bodily injury** sustained by a person described in a, b, or c above.
2. "**Rated resident**" means a person residing in the same household as **you** at the time of the loss who is not a **relative**, but only if that person:
   a. is listed in the "Drivers and household residents" section on the **declarations page**;
   b. is not designated as either an "Excluded" or a "List only" driver; and
   c. is not insured for uninsured motorist coverage by any other insurance policy.
3. "**Uninsured motor vehicle**" means a land motor vehicle or trailer of any type:
   a. to which no bodily injury liability bond or policy applies at the time of the accident;
   b. to which a bodily injury liability bond or policy applies at the time of the accident, but the bonding or insuring company:
      (i) denies coverage; or
      (ii) is or becomes insolvent;
   c. to which a bodily injury liability bond or policy applies at the time of the accident, but its limit of liability for bodily injury is less than the bodily injury damages an **insured person** is legally entitled to recover; or
   d. that is a hit-and-run vehicle whose owner or operator cannot be identified and which causes an accident, with or without physical contact, resulting in **bodily injury** to an **insured person**, provided that the **insured person**, or someone on his or her behalf, reports the accident to the police or civil authority within 24 hours or as soon as practicable after the accident.

   An "**uninsured motor vehicle**" does not include any vehicle or equipment:
   a. owned by **you** or a **relative** or furnished or available for the regular use of **you** or a **relative**. However, this shall not apply to a **covered auto** when coverage is denied under Part I—Liability To Others of this policy because of the exclusion of **bodily injury** to **you** or a **relative**, if the **bodily injury** results from operation of the **covered auto** by a person other than **you** or a **relative**;
   b. operated on rails or crawler treads;
   c. designed mainly for use off public roads, while not on public roads;
   d. while located for use as a residence or premises; or
   e. that is a **covered auto**. However, this shall not apply when coverage is denied under Part I—Liability To Others of this policy because of the exclusion of **bodily injury** to **you** or a **relative**, if the **bodily injury** results from operation of the **covered auto** by a person other than **you** or a **relative**.

Coverage under this Part III will not apply:

1.  to **bodily injury** sustained by any person while using or **occupying**:
    a.  a **covered auto** while being used:
        (i)   to carry persons or property for compensation or a fee;
        (ii)  for retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of magazines, newspapers, mail or food; or
        (iii) for **ride-sharing activity**.
        This exclusion does not apply to shared-expense car pools; or
    b.  a motor vehicle that is owned by **you** or a **relative**. This exclusion does not apply:
        (i)   to a **covered auto** that is insured under this Part III; or
        (ii)  if **you** have elected stacked uninsured motorist coverage;
2.  to **bodily injury** sustained by **you**, a **relative**, or a **rated resident** while using any vehicle, other than a **covered auto**, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle;
3.  directly or indirectly to benefit any insurer or self-insurer under any of the following or similar laws:
    a.  workers' compensation law; or
    b.  disability benefits law;
4.  to any punitive or exemplary damages;
5.  to **bodily injury** sustained by any person if that person or the legal representative of that person settles without **our** written consent, unless **our** right to recover payment has not been prejudiced by such settlement. However, this exclusion does not apply to a settlement to which **we** have consented with the insurer of a vehicle described in section 3.c. of the definition of an **uninsured motor vehicle**; or
6.  to **bodily injury** arising out of the use of a **covered auto** while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of a **covered auto** by **you**, a **relative**, or a **rated resident**.

### LIMITS OF LIABILITY

1.  If **you** have elected stacked uninsured motorist coverage, the following limits of liability shall apply:

    If **your declarations page** shows a split limit:
    a.  the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person. When the limits of two or more **covered autos** are stacked, the most **we** will pay for all damages due to **bodily injury** to one person is the sum of the "each person" limits for each **covered auto** shown on the **declarations page**; and
    b.  subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident. When the limits of two or more **covered autos** are stacked, the most **we** will pay for all damages due to **bodily injury** to two or more persons in any one accident is the sum of the "each accident" limits for each **covered auto** shown on the **declarations page**.

The **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any one accident. When the limits of two or more **covered autos** are stacked, the most **we** will pay for the total of all damages resulting from any one accident is the sum of the combined single limits for each **covered auto** shown on the **declarations page**.

2. If **you** have elected non-stacked uninsured motorist coverage, the following limits of liability shall apply:

   If **your declarations page** shows a split limit:
   a. the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person; and
   b. subject to the "each person limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident.

   If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any one accident. However, without changing this total limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

   The limit of liability shown on the **declarations page** for Uninsured Motorist Coverage is the most **we** will pay regardless of the number of:
   a. claims made;
   b. **covered autos**;
   c. **insured persons**;
   d. lawsuits brought;
   e. vehicles involved in the accident; or
   f. premiums paid.

3. Whether **you** have elected stacked uninsured motorist coverage or non-stacked uninsured motorist coverage, the following provisions shall apply:

   The "each person" limit of liability includes the total of all claims made for **bodily injury** to an **insured person** and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death, if recoverable under the applicable law.

   In determining the amount payable under this Part III, the amount of damages that an **insured person** is entitled to recover for **bodily injury** will be reduced by:
   a. all sums paid because of **bodily injury** by any persons or organizations that may be legally responsible;
   b. all sums paid or payable under Part I—Liability To Others;
   c. all sums paid or payable under Part II(A)—Personal Injury Protection Coverage or Part II(B)—Medical Payments Coverage;

25

all sums paid or payable because of **bodily injury** under any of the following or similar laws:

- (i) workers' compensation law; or
- (ii) disability benefits law;
- e. all sums paid or payable as personal injury protection benefits; and
- f. the amount of the limits of the uninsured motorist's liability policy, even if the settlement reached with the uninsured motorist is less than the amount of the limits of the uninsured motorist's liability policy.

No one will be entitled to duplicate payments for the same elements of damages.

## OTHER INSURANCE

1. If **you** have elected stacked uninsured motorist coverage, the following shall apply:

   If there is other uninsured motorist coverage that applies to the accident on a primary basis, **we** will pay only **our** proportionate share of the damages.

   Any insurance **we** provide with respect to a vehicle that is not a **covered auto** will be excess over any other uninsured motorist coverage.

2. If **you** have elected non-stacked uninsured motorist coverage, the following shall apply:

   If there is other uninsured motorist coverage that applies to the accident on a primary basis, the total benefits payable to any one person will not exceed the maximum benefits payable by the policy with the highest limit for uninsured motorist coverage. **We** will pay only **our** proportionate share of the damages. This applies no matter how many autos or auto policies may be involved whether written by **us** or another company.

   Any insurance **we** provide with respect to a vehicle that is not a **covered auto** will be excess over any other uninsured motorist coverage.

   If an **insured person** sustains **bodily injury** while **occupying** a motor vehicle, other than a **covered auto**, the **insured person** may elect to receive excess uninsured motorist benefits under only one policy of insurance under which the **insured person** is an insured. If the **insured person** elects to receive excess uninsured motorist benefits under a policy of insurance other than this policy, **we** will not pay any uninsured motorist benefits due to **bodily injury** to the **insured person**.

   If an **insured person** sustains **bodily injury** while not **occupying** a motor vehicle, the **insured person** may elect to receive uninsured motorist benefits under only one policy of insurance under which the **insured person** is an insured. If the **insured person** elects to receive uninsured motorist benefits under a policy of insurance other than this policy, **we** will not pay any uninsured motorist benefits due to **bodily injury** to the **insured person**.

If an **insured person** elects to receive or receives uninsured motorist benefits under this policy and subsequently elects to receive or receives uninsured motorist benefits under a policy of insurance other than this policy, that **insured person** will hold the amount of those benefits in trust pending a determination regarding whether **we** are entitled to reimbursement of all or a portion of **our** uninsured motorist benefit payments.

## OUR RIGHTS TO RECOVER PAYMENT

If an insured person recovers from another without **our** written consent, the insured person's right to payment under any affected coverage will no longer exist. This applies in the event the insured's recovery is prejudicial to **us**.

## PART IV—DAMAGE TO A VEHICLE

## INSURING AGREEMENT—COLLISION COVERAGE

If **you** pay the premium for this coverage, **we** will pay for sudden, direct and accidental loss to a:

1. **covered auto**, including an attached **trailer**; or
2. **non-owned auto**;

and its **custom parts or equipment**, resulting from **collision**.

In addition, **we** will pay the reasonable cost to replace any child safety seat damaged in an accident to which this coverage applies.

## INSURING AGREEMENT—COMPREHENSIVE COVERAGE

If **you** pay the premium for this coverage, **we** will pay for sudden, direct and accidental loss to a:

1. **covered auto**, including an attached **trailer**; or
2. **non-owned auto**;

and its **custom parts or equipment**, that is not caused by **collision**.

A loss not caused by **collision** includes:

1. contact with an animal (including a bird);
2. explosion or earthquake;
3. fire;
4. malicious mischief or vandalism;
5. missiles or falling objects;
6. riot or civil commotion;
7. theft or larceny;
8. windstorm, hail, water or flood; or
9. breakage of glass not caused by **collision**.

In addition, **we** will pay for:

1. reasonable transportation expenses incurred by **you** if a **covered auto** is stolen; and

A combined maximum of $900, not exceeding $30 per day, will apply to these additional benefits. The additional benefit for transportation expenses will not apply if **you** purchased Rental Reimbursement Coverage for the stolen **covered auto**.

Coverage for transportation expenses and loss of use damages begins 48 hours after **you** report the theft to **us** and ends the earliest of:
1. when the **auto** has been recovered and returned to **you** or its owner;
2. when the **auto** has been recovered and repaired;
3. when the **auto** has been replaced; or
4. 72 hours after **we** settle the loss if the **auto** is deemed by **us** to be a total loss.

**We** must receive written proof of transportation expenses and loss of use damages.

### INSURING AGREEMENT—FULL COMPREHENSIVE
### WINDOW GLASS COVERAGE

If **you** pay the premium for Comprehensive Coverage, **we** will pay for sudden, direct, and accidental loss to a windshield on a **covered vehicle** that is not caused by a **collision**, without applying a deductible.

### INSURING AGREEMENT—ADDITIONAL CUSTOM PARTS
### OR EQUIPMENT COVERAGE

**We** will pay for sudden, direct and accidental loss to **custom parts or equipment** on a **covered auto** for which this coverage has been purchased. This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **covered auto** and the loss is covered under one of those coverages. This coverage applies in addition to any coverage automatically provided for **custom parts or equipment** under Comprehensive Coverage or Collision Coverage.

### INSURING AGREEMENT—RENTAL REIMBURSEMENT COVERAGE

**We** will reimburse rental charges incurred when **you** rent an **auto** from a rental agency or auto repair shop due to a loss to a **covered auto** for which Rental Reimbursement Coverage has been purchased. This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **covered auto** and the loss is covered under one of those coverages.

Additional fees or charges for insurance, damage waivers, optional equipment, fuel, or accessories are not covered.

This coverage is limited to the each day limit shown on the **declarations page** for a maximum of 30 days.

If Rental Reimbursement Coverage applies, no other coverage under this policy for rental expenses will apply.

1. when the **covered auto** cannot be driven due to a loss; or
2. if the **covered auto** can be driven, when **you** deliver the **covered auto** to an auto repair shop or one of **our** Service Centers for repairs due to the loss;

and ending the earliest of:

1. when the **covered auto** has been returned to **you**;
2. when the **covered auto** has been repaired;
3. when the **covered auto** has been replaced;
4. 72 hours after **we** make an offer to settle the loss if the **covered auto** is deemed by **us** to be a total loss; or
5. when **you** incur 30 days worth of rental charges.

**You** must provide **us** written proof of **your** rental charges to be reimbursed.

### INSURING AGREEMENT—LOAN/LEASE PAYOFF COVERAGE

If **you** pay the premium for this coverage, and the **covered auto** for which this coverage was purchased is deemed by **us** to be a total loss, **we** will pay, in addition to any amounts otherwise payable under this Part IV, the difference between:

1. the actual cash value of the **covered auto** at the time of the total loss; and
2. any greater amount the owner of the **covered auto** is legally obligated to pay under a written loan or lease agreement to which the **covered auto** is subject at the time of the total loss, reduced by:
   a. unpaid finance charges or refunds due to the owner for such charges;
   b. excess mileage charges or charges for wear and tear;
   c. charges for extended warranties or refunds due to the owner for extended warranties;
   d. charges for credit insurance or refunds due to the owner for credit insurance;
   e. past due payments and charges for past due payments; and
   f. collection or repossession expenses.

However, **our** payment under this coverage shall not exceed the limit of liability shown on the **declarations page**. The limit of liability is a percentage of the actual cash value of the **covered auto** at the time of the loss.

This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **covered auto** and the loss is covered under one of those coverages.

### INSURING AGREEMENT—PET INJURY COVERAGE

If **you** have purchased Collision coverage for at least one **covered auto** under **your** policy, and if **your pet** sustains injury or death while inside a **covered auto** or **non-owned auto** at the time of a loss covered under Collision or Comprehensive coverage, **we** will provide:

1. up to $1,000 for reasonable and customary veterinary fees incurred by **you**, a **relative**, or a **rated resident** if **your pet** is injured in, or as a direct result of, the covered loss; or

29

less any payment **we** made toward veterinary expenses for **your pet**.

In the event of a covered loss due to the theft of a **covered auto** or **non-owned auto**, **we** will provide the death benefit provided **your pet** is inside that auto at the time of the theft and **your pet** is not recovered.

## ADDITIONAL DEFINITIONS

When used in this Part IV:

1. "**Collision**" means the upset of a vehicle or its impact with another vehicle or object.
2. "**Custom parts or equipment**" means equipment, devices, accessories, enhancements and changes, other than those that are offered by the manufacturer specifically for that **auto** model, or that are installed by the auto dealership as part of the original sale of a new **auto**, that:
   a. are permanently installed or attached; and
   b. alter the appearance or performance of the **auto**.
3. "**Mechanical parts**" means operational parts on a vehicle that wear out over time or have a finite useful life or duration typically shorter than the life of the vehicle as a whole. **Mechanical parts** do not include external crash parts, wheels, paint, or windshields and other glass.
4. "**Non-owned auto**" means an **auto** that is not owned by or furnished or available for the regular use of **you**, a **relative**, or a **rated resident** while in the custody of or being operated by **you**, a **relative**, or a **rated resident** with the permission of the owner of the **auto** or the person in lawful possession of the **auto**. A **non-owned auto** also includes a temporary substitute **auto**, even when furnished or available for regular use.
5. "**Your pet**" means any dog or cat owned by **you**, a **relative**, or a **rated resident**.

## EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART IV.

Coverage under this Part IV will not apply for loss:

1. to any vehicle while being used:
   a. to carry persons or property for compensation or a fee;
   b. for retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of magazines, newspapers, mail or food; or
   c. for **ride-sharing activity**.
   This exclusion does not apply to shared-expense car pools;
2. to a **non-owned auto** while being maintained or used by a person while employed or engaged in any **auto business**;
3. to any vehicle resulting from, or sustained during practice or preparation for:
   a. any pre-arranged or organized racing, stunting, speed or demolition contest or activity by an insured person; or
   b. any driving activity conducted on a permanent or temporary racetrack or racecourse by an insured person;
4. to any vehicle for which insurance:
   a. is afforded under a nuclear energy liability insurance contract; or

30

we would afford under a nuclear energy liability insurance contact or its termination upon exhaustion of its limit of liability;

5. to any vehicle caused by an intentional act committed by or at the direction of **you**, a **relative**, or the owner of a **non-owned auto**, even if the actual damage is different than that which was intended or expected. This exclusion precludes coverage for any person insured by this policy regardless of whether the person seeking coverage participated in the intentional act;

6. to a **covered auto** while it is leased or rented to others or given in exchange for compensation, including while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of a **covered auto** by **you**, a **relative**, or a **rated resident**;

7. due to destruction or confiscation by governmental or civil authorities of any vehicle because **you**, any **relative**, or any **rated resident** engaged in illegal activities;

8. to any vehicle that is due and confined to:
   a. wear and tear;
   b. freezing;
   c. mechanical, electrical or electronic breakdown or failure; or
   d. road damage to tires.

   This exclusion does not apply if the damage results from the theft of a vehicle;

9. to portable equipment, devices, accessories, and any other personal effects that are not permanently installed. This includes, but is not limited to:
   a. tapes, compact discs, cassettes, DVDs, and other recording or recorded media;
   b. any case or other container designed for use in storing or carrying tapes, compact discs, cassettes, DVDs, or other recording or recorded media;
   c. any device used for the detection or location of radar, laser, or other speed measuring equipment or its transmissions; and
   d. CB radios, telephones, two-way mobile radios, DVD players, personal computers, personal digital assistants, or televisions;

10. to any vehicle caused directly or indirectly by:
    a. war (declared or undeclared) or civil war;
    b. warlike action by any military force of any government, sovereign, or other authority using military personnel or agents. This includes any action taken to hinder or defend against an actual or expected attack; or
    c. insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these acts;

11. to any vehicle caused directly or indirectly by any accidental or intentional discharge, dispersal or release of radioactive or nuclear material; or

12. to any vehicle caused by, or reasonably expected to result from, a criminal act or omission of **you**, a **relative**, a **rated resident**, or the owner of a **non-owned auto**. This exclusion applies regardless of whether **you**, the **relative**, the **rated resident**, or the owner of the **non-owned auto** is actually charged with, or convicted of, a crime. This exclusion precludes coverage for any person insured by this policy regardless of whether the person seeking coverage participated in the criminal act or omission. This exclusion does not apply to moving traffic violations.

1. The limit of liability for loss to a **covered auto**, **non-owned auto**, or **custom parts or equipment** is the lowest of:
   a. the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible;
   b. the amount necessary to replace the stolen or damaged property reduced by the applicable deductible;
   c. the amount necessary to repair the damaged property to its pre-loss physical condition reduced by the applicable deductible; or
   d. the Stated Amount shown on the **declarations page** for that **covered auto**.
   However, the most **we** will pay for loss to:
   a. **custom parts or equipment** is \$1,000 unless **you** purchased Additional Custom Parts or Equipment Coverage ("ACPE"). If **you** purchased ACPE, the most **we** will pay is \$1,000 plus the amount of ACPE **you** purchased.
   b. a **trailer** is the limit of liability shown on the **declarations page** for that **trailer**. If the **trailer** is not shown on the **declarations page**, the limit of liability is \$500.
2. Payments for loss to a **covered auto**, **non-owned auto**, or **custom parts or equipment** are subject to the following provisions:
   a. If coverage applies to a **non-owned auto**, **we** will provide the broadest coverage applicable to any **covered auto** shown on the **declarations page**.
   b. If **you** have elected a Stated Amount for a **covered auto**, the Stated Amount is the most **we** will pay for all loss to that **covered auto**, including its **custom parts or equipment**.
   c. Coverage for **custom parts or equipment** will not cause **our** limit of liability for loss to an **auto** under this Part IV to be increased to an amount in excess of the actual cash value of the **auto**, including its **custom parts or equipment**. This does not apply to Additional Custom Parts or Equipment Coverage the insured has purchased.
   d. In determining the amount necessary to repair damaged property to its preloss physical condition, the amount to be paid by **us**:
      (i) will not exceed the prevailing competitive labor rates charged in the area where the property is to be repaired and the cost of repair or replacement parts and equipment, as reasonably determined by **us**; and
      (ii) will be based on the cost of repair or replacement parts and equipment which may be new, reconditioned, remanufactured or used, including, but not limited to:
         (a) original manufacturer parts or equipment; and
         (b) nonoriginal manufacturer parts or equipment.
   e. To determine the amount necessary to repair or replace the damaged property as referred to in subsection 1., the total cost of necessary repair or replacement may be reduced by unrepaired prior damage. Unrepaired prior damage includes broken, cracked or missing parts; rust; dents; scrapes; gouges; and peeling paint. The reduction for unrepaired prior damage is the cost of labor, parts and materials necessary to repair or replace damage, deterioration, defects, or wear and tear on exterior body parts, windshields and other glass, wheels, and paint, that existed prior to the accident and that is eliminated as a result of the repair or replacement of property damaged in the loss.

32

erty as referred to in subsection 1., an adjustment may be made for betterment or depreciation and physical condition on:

    (i)   batteries;

    (ii)  tires;

    (iii)  engines and transmissions, if the engine has greater than 80,000 miles; and

    (iv)  any other **mechanical parts** that are nonfunctioning or inoperative.

    **We** will not make an adjustment for the labor costs associated with the replacement or repair of these parts.

   g.  The actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs.

3.  No deductible will apply to a loss to window glass when the glass is repaired instead of replaced.

4.  Duplicate recovery for the same elements of damages is not permitted.

5.  The following additional limits of liability apply to Pet Injury coverage:

   a.  The most **we** will pay for all damages in any one loss is a total of $1,000 regardless of the number of dogs or cats involved.

   b.  If **your pet** dies in, or as a direct result of, a covered loss, **we** will provide a death benefit of $1,000, less any payment **we** made toward veterinary expenses for **your pet**.

   c.  No deductible shall apply to this coverage.

## PAYMENT OF LOSS

**We** may, at **our** option:

1.  pay for the loss in money; or

2.  repair or replace the damaged or stolen property.

At **our** expense, **we** may return any recovered stolen property to **you** or to the address shown on the **declarations page**, with payment for any damage resulting from the theft. **We** may keep all or part of the property at the agreed or appraised value.

**We** may settle any loss with **you** or the owner or lienholder of the property.

## NO BENEFIT TO BAILEE

Coverage under this Part IV will not directly or indirectly benefit any carrier or other bailee for hire.

## LOSS PAYABLE CLAUSE

Payment under this Part IV for a loss to a **covered auto** will be made according to **your** interest and the interest of any lienholder shown on the **declarations page** or designated by **you**. At **our** option, payment may be made to both jointly, or to either separately. However, if the **covered auto** is not a total loss, **we** may make payment to **you** and the repairer of the **auto**.

33

1. where fraud, misrepresentation, material omission, or intentional damage resulting in a denial of coverage by **us** has been committed by or at the direction of **you** or any person seeking coverage; or
2. where the loss is otherwise not covered under the terms of this policy.

If this policy is cancelled, nonrenewed or voided, the interest of any lienholder under this agreement will also terminate.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for a **non-owned auto**, or **trailer** not shown on the **declarations page**, will be excess over any other collectible source of recovery including, but not limited to:

1. any coverage provided by the owner of the **non-owned auto** or **trailer**;
2. any other applicable physical damage insurance; and
3. any other source of recovery applicable to the loss.

## APPRAISAL

If **we** cannot agree with **you** on the amount of a loss, then **we** or **you** may demand an appraisal of the loss. However, mediation, if desired, must be requested prior to demanding appraisal. Within 30 days of any demand for an appraisal, each party shall appoint a competent and impartial appraiser and shall notify the other party of that appraiser's identity. The appraisers will determine the amount of loss. If they fail to agree, the disagreement will be submitted to an impartial umpire chosen by the appraisers, who is both competent and a qualified expert in the subject matter. If the two appraisers are unable to agree upon an umpire within 15 days, **we** or **you** may request that a judge of a court of record, in the county where **you** reside, select an umpire. The appraisers and umpire will determine the amount of loss. The amount of loss agreed to by both appraisers, or by one appraiser and the umpire, will be binding. **You** will pay **your** appraiser's fees and expenses. **We** will pay **our** appraiser's fees and expenses. All other expenses of the appraisal, including payment of the umpire if one is selected, will be shared equally between **us** and **you**. Neither **we** nor **you** waive any rights under this policy by agreeing to an appraisal.

### PART V—ROADSIDE ASSISTANCE COVERAGE

### INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay for **our** authorized service representative to provide the following services when necessary due to a **covered emergency**:

1. towing of a **covered disabled auto** to the nearest qualified repair facility; and
2. labor on a **covered disabled auto** at the place of disablement.

facility, **you** will be responsible for any additional charges incurred.

## ADDITIONAL DEFINITIONS

When used in this Part V:
1. "**Covered disabled auto**" means a **covered auto** for which this coverage has been purchased that sustains a **covered emergency**.
2. "**Covered emergency**" means a disablement that is a result of:
   a. mechanical or electrical breakdown;
   b. battery failure;
   c. insufficient supply of fuel, oil, water, or other fluid;
   d. flat tire;
   e. lock-out; or
   f. entrapment in snow, mud, water or sand within 100 feet of a road or highway.

## EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EX-CLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART V.

Coverage under this Part V will not apply to:
1. more than three **covered emergencies** for any single **covered auto** in a six-month period;
2. the cost of purchasing parts, fluid, lubricants, fuel, or replacement keys, or the labor to make replacement keys;
3. installation of products or material not related to the disablement;
4. labor not related to the disablement;
5. labor on a **covered disabled auto** for any time period in excess of 60 minutes per disablement;
6. towing or storage related to impoundment, abandonment, illegal parking, or other violations of law;
7. assistance with jacks, levelers, airbags or awnings;
8. labor or repair work performed at a service station, garage, or repair shop;
9. auto storage charges;
10. disablement that occurs on roads not regularly maintained, sand beaches, open fields, or areas designated as not passable due to construction, weather, or earth movement;
11. mounting or removing of snow tires or chains;
12. tire repair;
13. disablement that results from an intentional or willful act or action by **you**, a **relative**, a **rated resident**, or the operator of a **covered disabled auto**, with the intent of causing such disablement;
14. any **covered auto** while being used in connection with **ride-sharing activity**;
15. any **covered auto** while being used in connection with a **personal vehicle shar-ing program**. However, this shall not apply when a **covered auto** is being used by **you**, a **relative**, or a **rated resident**; or
16. a trailer.

35

When service is rendered by a provider in the business of providing roadside assistance and towing services, other than one of **our** authorized service representatives, **we** will pay only reasonable charges, as determined by **us**, for:

1. towing of a **covered disabled auto** to the nearest qualified repair facility; and
2. labor on a **covered disabled auto** at the place of disablement;

which is necessary due to a **covered emergency**.

## OTHER INSURANCE

Any coverage provided under this Part V for service rendered by an unauthorized service provider will be excess over any other collectible insurance or towing protection coverage.

## PART VI—DUTIES IN CASE OF AN ACCIDENT OR LOSS

For coverage to apply under this policy, **you** or the person seeking coverage must promptly report each accident or loss even if **you** or the person seeking coverage is not at fault. **You** or the person seeking coverage must provide **us** with all accident/loss information, including time, place, and how the accident or loss happened. **You** or the person seeking coverage must also obtain and provide **us** the names and addresses of all persons involved in the accident or loss, the names and addresses of any witnesses, and the license plate numbers of the vehicles involved.

If **you** or the person seeking coverage cannot identify the owner or operator of a vehicle involved in the accident, or if theft or vandalism has occurred, **you** or the person seeking coverage must notify the police within 24 hours or as soon as practicable.

A person seeking coverage must:

1. cooperate with **us** in any matter concerning a claim or lawsuit;
2. provide any written proof of loss **we** may reasonably require;
3. allow **us** to take signed and recorded statements, including sworn statements and examinations under oath, which **we** may conduct outside the presence of **you** or any other person claiming coverage, and answer all reasonable questions **we** may ask and provide any documents, records, or other tangible items that **we** request, when, where, and as often as **we** may reasonably require;
4. promptly call to notify **us** about any claim or lawsuit and send **us** any and all legal papers relating to the claim or suit;
5. attend hearings and trials as **we** require;
6. take reasonable steps after a loss to protect the **covered auto**, or any other vehicle for which coverage is sought, from further loss. **We** will pay reasonable expenses incurred in providing that protection. If failure to provide such protection results in further loss, any additional damages will not be covered under this policy;
7. allow **us** to have the damaged **covered auto**, or any other damaged vehicle for which coverage is sought, inspected and appraised before its repair or disposal;

36

**we** may reasonably require; and

9.  authorize **us** to obtain medical and other records.

## PART VII—GENERAL PROVISIONS

### POLICY PERIOD AND TERRITORY

This policy applies only to accidents and losses occurring during the policy period shown on the **declarations page** and that occur within a state, territory or possession of the United States of America, or a province or territory of Canada, or while a **covered auto** or **trailer** shown on the **declarations page** is being transported between their ports.

### CHANGES

This policy contract, **your** insurance application (which is made a part of this policy as if attached hereto), the **declarations page**, and all endorsements to this policy issued by **us**, contain all the agreements between **you** and **us**. Subject to the following, the terms of this policy may not be changed or waived except by an endorsement issued by **us**.

The premium for this policy is based on information **we** received from **you** and other sources. **You** agree to cooperate with **us** in determining if this information is correct and complete, and to promptly notify **us** if it changes during the policy period. If this information is incorrect, incomplete, or changes during the policy period, **you** agree that **we** may adjust **your** policy information and premium accordingly. Changes that may result in a premium adjustment are contained in **our** rates and rules. These include, but are not limited to, **you**, a **relative**, or a **rated resident** obtaining a driver's license or operator's permit, or changes in:

1.  the number, type or use classification of **covered autos**;
2.  the persons who regularly operate a **covered auto**;
3.  the persons of legal driving age residing in **your** household;
4.  the residents in **your** household;
5.  an operator's marital status;
6.  **your** mailing address and **your** residence address;
7.  the principal garaging address of any **covered auto**;
8.  coverage, deductibles, or limits of liability; or
9.  rating territory or discount eligibility.

The coverage provided in **your** policy may be changed only by the issuance of a new policy or an endorsement by **us**. However, if during the policy period **we** broaden any coverage afforded under the current edition of **your** policy without additional premium charge, that change will automatically apply to **your** policy as of the date the coverage change is implemented in **your** state.

If **you** ask **us** to delete a vehicle from this policy, no coverage will apply to that vehicle as of the date and time **you** ask **us** to delete it.

37

**You** must promptly report to **us** all changes, including additions and deletions, in policy information. This includes, but is not limited to, changes in:

1. **your** mailing address or **your** residence address;
2. the principal garaging address of any **covered auto**;
3. the residents in **your** household;
4. the persons of legal driving age residing in **your** household;
5. the persons who regularly operate a **covered auto**;
6. an operator's marital status; or
7. the driver's license or operator's permit status of **you**, a **relative**, or a **rated resident.**

## SETTLEMENT OF CLAIMS

**We** may use estimating, appraisal, or injury evaluation systems to assist **us** in adjusting claims under this policy and to assist **us** in determining the amount of damages, expenses, or loss payable under this policy. Such systems may be developed by **us** or a third party and may include computer software, databases, and specialized technology.

## TERMS OF POLICY CONFORMED TO STATUTES

If any provision of this policy fails to conform to the statutes of the state listed on **your** application as **your** residence, the provision shall be deemed amended to conform to such statutes. All other provisions shall be given full force and effect. Any disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the state listed on **your** application as **your** residence.

## TRANSFER OF INTEREST

This policy may not be assigned without **our** written consent. However, **we** will not prohibit an insured's option to assign their rights and benefits post loss. However, if a named insured shown on the **declarations page** dies, this policy will provide coverage until the end of the policy period for the legal representative of the named insured, while acting as such, and for persons covered under this policy on the date of the named insured's death.

## FRAUD OR MISREPRESENTATION

This policy was issued in reliance upon the accuracy and truthfulness of information provided on **your** insurance application. **We** may void this policy at any time, including after the occurrence of an accident or loss, if **you**:

1. made incorrect or untrue statements or representations to **us** with regard to any material fact or circumstance;
2. concealed or misrepresented any material fact or circumstance; or
3. engaged in fraudulent conduct;

at the time of application. This means that **we** will not be liable for any claims or damages that would otherwise be covered.

Any changes we make at **your** request to this policy after inception will be made in reliance upon information **you** provide. If **you**:

1. make incorrect statements or representations to **us** with regard to any material fact or circumstance;
2. conceal or misrepresent any material fact or circumstance; or
3. engage in fraudulent conduct;

in connection with a requested change **we** may void the policy or reform it as it existed immediately prior to the requested change. **We** may do this at any time, including after the occurrence of an accident or loss.

When **we** have not voided or reformed the policy, **we** may still deny coverage for an accident or loss if **you**, in connection with the policy application, in connection with any requested change, or at any time during the policy period, have concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct and that concealment, misrepresentation, or fraudulent conduct was material to a risk **we** assumed.

**We** may deny coverage for an accident or loss if **you** or a person seeking coverage has concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the occurrence of a loss, or the presentation or settlement of a claim.

**PAYMENT OF PREMIUM AND FEES**

If **your** initial premium payment is by check, draft, electronic funds transfer, or similar form of remittance, coverage under this policy is conditioned on payment to **us** by the financial institution. If the financial institution upon presentment does not honor the check, draft, electronic funds transfer, or similar form of remittance, this policy shall be deemed void from its inception, unless the nonpayment is cured within the earlier of:

1. 5 days after actual notice by certified mail is received by **you**; or
2. 15 days after notice is sent to **you** by certified or registered mail.

If **we** deem the policy void from its inception, **we** will not be liable under this policy for any claims or damages that would otherwise be covered if the check, draft, electronic funds transfer, or similar form of remittance had been honored by the financial institution. Any action by **us** to present the remittance for payment more than once shall not affect **our** right to void this policy.

In addition to premium, fees may be charged on **your** policy. **We** may charge fees for installment payments, late payments, and other transactions. Payments made on **your** policy will be applied first to fees, then to premium due.

If a required premium is not paid when due, or by the end of any grace period if **we** agree to grant a grace period, this policy will lapse as of the due date of the overdue premium. If **we** offer to renew or continue this policy, and **you** fail to pay the required premium when due, this policy will automatically terminate at the end of the policy period unless **we** elect to reinstate the policy without a lapse. **Your** failure to pay the required renewal premium means that **you** have declined **our** offer.

**You** may cancel this policy during the policy period by calling or writing **us** and stating the future date **you** wish the cancellation to be effective. However, if **your** policy provides personal injury protection coverage, property damage liability, or both, **you** may not cancel **your** policy during the first two months immediately following the effective date of the initial policy period except:

1. upon total destruction of the **covered auto**;
2. upon transfer of ownership of the **covered auto**;
3. after the purchase of another policy or binder covering the **covered auto**; or
4. as provided in the Rate Increases provision under this Part VII.

Upon receipt of a written request, the named insured may cancel this policy within the first 60 days of the initial policy period if the named insured is a member of the United States Armed Forces and is called to or on active duty outside the United States in an emergency situation.

**We** may cancel this policy during the policy period by mailing a notice of cancellation to the named insured shown on the **declarations page** at the last known address appearing in **our** records.

**We** will give at least 10 days notice of cancellation if the policy is cancelled for nonpayment of premium.

**We** will give at least 45 days notice of cancellation in all other cases.

During the first 60 days immediately following the effective date of the initial policy period, **we** may cancel **your** policy for nonpayment of premium if the reason for the cancellation is the issuance of a check for the premium that is dishonored for any reason or for any other type of premium payment that was subsequently determined to be rejected or invalid. If **your** policy has been in effect for less than 60 days, **we** may also cancel for reasons other than nonpayment of premium

After this policy is in effect for 60 days, or if this is a renewal or continuation policy, **we** may cancel only for one or more of the following reasons:

1. nonpayment of premium;
2. material misrepresentation or fraud by **you** with respect to any material fact in the procurement, continuation, change, or renewal of this policy;
3. material misrepresentation or fraud in the submission of any claim under this policy; or
4. the driver's license or motor vehicle registration of the named insured or of any other operator who either resides in the same household or customarily operates a **covered auto** has been under suspension or revocation during the initial policy period or the 180 days immediately preceding its effective date, or if the policy is a renewal, during the renewal policy period.

We will not cancel this policy based on the lawful use, possession, or ownership of a firearm or ammunition by an insured or household member of an insured.

United States postal proof of mailing, or certified or registered mailing will be sufficient proof of notice. If this policy is cancelled, coverage will not be provided as of the effective date and time shown in the notice of cancellation. For purposes of cancellation, this policy is neither severable nor divisible. Any cancellation will be effective for all coverages for all persons and all vehicles.

## CANCELLATION REFUND

Upon cancellation, **you** may be entitled to a premium refund. However, **our** making or offering of a refund is not a condition of cancellation.

If this policy is cancelled, any refund due will be computed on a daily pro rata basis.

If **we** cancel this policy, or if the cancellation is for nonpayment of premium, any refund due will be mailed within 15 days of the effective date of the policy cancellation.

If **you** cancel **your** policy, or if the named insured is a service member, as defined in Florida Statute §250.01, and he or she cancels due to being called to active duty or being transferred by the United States Armed Forces to a location where the insurance is not required, any refund due will be mailed within 30 days of the effective date of the policy cancellation. **We** may require a service member to present **us** proof as outlined in Florida Statute §627.7283.

## RATE INCREASES

If **we** determine that, in accordance with **our** rate filings and the applicable laws of Florida, **you** have been charged a premium that is incorrect for the coverage set forth in **your** application, **we** will provide notice to **you** of the amount of additional premium due and that **you** have the following options:
1. **you** have a period of 10 days, or longer if specified by **us**, from receipt of the notice to pay the additional amount of premium due and maintain **your** policy in force;
2. **you** have a period of 10 days, or longer if specified by **us**, from receipt of the notice to cancel the policy and demand a refund of any unearned premiums; or
3. if **you** fail to timely respond to the notice, **we** shall cancel the policy and return any unearned premium to **you**. The date of the cancellation will be stated in the notice and will not be less than 14 days after the date of the notice.

Any refund due under this provision will be calculated on a daily pro rata basis.

## NONCANCELABLE POLICY

If this policy is issued for the purpose of providing proof of compliance with Florida Statute §627.7275(2)(a), as amended, in order to reinstate driving privileges following

41

may not be cancelled for any reason for the remainder of the policy period once the policy has been in effect for 60 days. After that point, any coverage under this policy for bodily injury liability, property damage liability, and personal injury protection may not be reduced below the minimum limits required by Florida law during the policy period.

### NONRENEWAL

If neither **we** nor one of **our** affiliates offers to renew or continue this policy, **we** will mail notice of nonrenewal to the named insured shown on the **declarations page** at the last known address appearing in **our** records. United States postal proof of mailing, or certified or registered mailing will be sufficient proof of notice. Notice will be mailed at least 45 days before the end of the policy period.

**We** will not nonrenew this policy based on the lawful use, possession, or ownership of a firearm or ammunition by an insured or a household member of an insured.

**We** will not fail to renew this policy based on if the insured has had only one accident in which he or she was at fault within the current three-year period.

**We** will not refuse to renew this policy solely because the insured committed a noncriminal traffic infraction unless the infraction is:
1. a second infraction committed within an 18-month period, or a third or subsequent infraction committed within a 36-month period; or
2. a violation of Florida Statute §316.183, when such violation is a result of exceeding the lawful speed limit by more than 15 miles per hour.

### AUTOMATIC TERMINATION

If **we** or an affiliate offers to renew or continue this policy and **you** or **your** representative does not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due will mean that **you** have not accepted **our** offer.

If **you** obtain other insurance on a **covered auto**, any similar insurance provided by this policy will terminate as to that **covered auto** on the effective date of the other insurance.

If a **covered auto** is sold or transferred to someone other than **you**, a **relative**, or a **rated resident**, any insurance provided by this policy will terminate as to that **covered auto** on the effective date of the sale or transfer.

### LEGAL ACTION AGAINST US

**We** may not be sued unless there is full compliance with all the terms of this policy.

We may not be sued for payment under Part I until the obligation of an insured person under Part I to pay is finally determined either by judgment after trial against that person or by written agreement of the insured person, the claimant, and **us**. No one will have any right to make **us** a party to a lawsuit to determine the liability of an insured person.

As a condition precedent to filing any legal action for benefits under Part II(A)–Personal Injury Protection Coverage or for medical payment benefits under Part II(B)—Medical Payments, written notice of intent to initiate litigation must be provided to **us** in accordance with the requirements set forth in the "Demand Letter" provisions of the "Florida Required Personal Injury Protection Benefits" statute. Therefore, **we** may not be sued for payment under Part II(A) or Part II(B) unless provisions of the Florida statute have been fully complied with.

If **we** retain salvage, **we** have no duty to preserve or otherwise retain the salvage for any purpose, including evidence for any civil or criminal proceeding.

### OUR RIGHTS TO RECOVER PAYMENT

**We** are entitled to the rights of recovery that the insured person to whom payment was made has against another, to the extent of **our** payment. That insured person may be required to sign documents related to the recovery and must do whatever else **we** require to help **us** exercise those recovery rights, and do nothing after an accident or loss to prejudice those rights. If necessary to protect **our** subrogation rights following an accident, the insured person must file suit against a liable person or organization within the time period specified by the applicable statute of limitations.

However, **we** may not assert rights of recovery against the owner or operator of an "uninsured motor vehicle," as defined in Part III—Uninsured Motorist Coverage, if the insured person under Part III provides **us** with written notice by certified or registered mail at least 30 days prior to entering into a settlement that an offer of settlement has been made by, or on behalf of, the owner or operator of the "uninsured motor vehicle" and **we** do not elect to pay to the insured person an amount equal to the amount offered in full settlement by, or on behalf of, the owner or operator of the "uninsured motor vehicle."

When an insured person has been paid by **us** and also recovers from another, the amount recovered will be held by the insured person in trust for **us** and reimbursed to **us** to the extent of **our** payment. If **we** are not reimbursed, **we** may pursue recovery of that amount directly against that insured person. However, this shall not apply to any payment made by **us** under Part II(A)—Personal Injury Protection Coverage of this policy for personal injury protection benefits required under the Florida Motor Vehicle No-Fault Law, as amended.

If **we** elect to exercise **our** rights of recovery against another, **we** will also attempt to recover any deductible incurred by an insured person under this policy unless **we** are specifically instructed by that person not to pursue the deductible. **We** have no obligation to pursue recovery against another for any loss not covered by this policy.

**We** reserve the right to compromise or settle the deductible and property damage claims against the responsible parties for less than the full amount. **We** also reserve the right to incur reasonable expenses and attorney fees in pursuit of the recovery.

If the total recovery is less than the total of **our** payment and the deductible, **we** will reduce reimbursement of the deductible based on the proportion that the actual recovery bears to the total of **our** payment and the deductible. A proportionate share of collection expenses and attorney fees incurred in connection with these recovery efforts will also reduce reimbursement of the deductible.

These provisions will be applied in accordance with state law.

## JOINT AND INDIVIDUAL INTERESTS

If there is more than one named insured on this policy, any named insured may cancel or change this policy. The action of one named insured will be binding on all persons provided coverage under this policy.

## BANKRUPTCY

The bankruptcy or insolvency of an insured person will not relieve **us** of any obligations under this policy.

## MEDIATION

Either **we** or **you** may request mediation of a claim for:
1. **bodily injury** in the amount of $10,000 or less under Part I—Liability To Others, Part II(A)—Personal Injury Protection Coverage, Part II(B)—Medical Payments Coverage, or Part III—Uninsured Motorist Coverage of this policy; or
2. **property damage** under Part I—Liability To Others or Part IV—Damage To A Vehicle.

A demand for mediation shall be filed with the Florida Department of Financial Services on a form which may be obtained from the Department. The demand must state why mediation is being requested and the issue in dispute. A demand may not be made after suit has been filed relating to the same facts already mediated.

Only one mediation may be requested for each claim unless the parties agree to further mediation. The mediator shall be selected by the Department at random. Each party may reject one mediator selected by the Department, either before or after the other party has rejected a mediator. The mediation shall be conducted informally, and may be held by telephone if agreed to by the mediator and the parties. The date, time, and place of the mediation conference shall be set by the mediator and shall be held no later than 45 days following the demand for mediation. All persons participating in the mediation must have the authority to make a binding decision. All parties must act in good faith throughout the mediation. Disclosures and statements made during mediation shall not

be deemed admissions in any subsequent action or proceeding relating to the claim or cause of action giving rise to the claim. The costs of mediation shall be shared equally by the parties unless the mediator determines that one party has not mediated in good faith. Any lawsuit regarding a mediated dispute must be filed as required under the "Limitations of Actions" statutes or within 60 days after the conclusion of the mediation process, whichever is later.

*PROGRESSIVE*®
*DIRECT Auto*

Policy Number: <Policy Number>
<Named Insd Full Name>
<* Second Named  Insd Full Name>
Page <1X> of <2X>

**APPROVED**

Date Received:    Date Of Action:
8/28/2018  09/6/2018
FL OFFICE OF INSURANCE REGULATION

## Florida Policy Endorsement

**Your** policy is amended as follows:

The Exclusions in PART III—Uninsured Motorist Coverage are deleted and replaced by the following:

**EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART III.**

Coverage under this Part III will not apply:

1. to **bodily injury** sustained by any person while using or **occupying**:
   a. a **covered** auto while being used:
      (i) to carry persons or property for compensation or a fee;
      (ii) for retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of magazines, newspapers, mail or food; or
      (iii) for **ride-sharing activity**.
      This exclusion does not apply to shared-expense car pools;  or
   b. a motor vehicle that is owned by **you** or a **relative**. This exclusion does not apply:
      (i) to a **covered auto** that is insured under this Part III;  or
      (ii) if you have elected stacked uninsured motorist coverage;
2. to **bodily injury** sustained by **you**, a **relative**, or a **rated resident** while using any vehicle, other than a **covered auto**, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle;
3. directly or indirectly to benefit any insurer or self-insurer under any of the following or similar laws:
   a. workers' compensation law; or
   b. disability benefits law;
4. to any punitive or exemplary damages; or
5. to **bodily injury** sustained by any person if that person or the legal representative of that person settles without **our** written consent, unless **our** right to recover payment has not been prejudiced by such settlement. However, this exclusion does not apply to a settlement to which **we** have consented with the insurer of a vehicle described in section 3.c. of the definition of an **uninsured motor vehicle**.

Form A261 FL (08/18)



Continued