IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS J. PIECZONKA, individually and on behalf of all others similarly situated, | ) ) | CASE NO. 1:19-cv-02965 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | |
| | ) | |
| PROGRESSIVE SELECT INSURANCE COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) ) | |

**DEFENDANT PROGRESSIVE SELECT INSURANCE COMPANY'S**
**MOTION TO DISMISS AND TO STRIKE THE NATIONWIDE CLASS ALLEGATIONS**

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f), Defendant Progressive

Select Insurance Company, by and through counsel, moves to dismiss Plaintiff's Complaint for

failure to state a claim upon which relief can be granted and to strike the nationwide class

allegations. A brief in support of this Motion is attached.

Respectfully submitted,

*/s/ Jennifer L. Mesko*
Karl A. Bekeny (0075332)
Benjamin C. Sassé (0072856)
Jennifer L. Mesko (0087897)
Courtney E. S. Mendelsohn (0091788)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Telephone:    216.592.5000
Facsimile:    216.592.5009
E-mail:    karl.bekeny@tuckerellis.com
            benjamin.sasse@tuckerellis.com
            jennifer.mesko@tuckerellis.com
            courtney.mendelsohn@tuckerellis.com

*Attorneys for Defendant Progressive Select*
*Insurance Company*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS J. PIECZONKA, individually and on behalf of all others similarly situated, | ) | CASE NO. 1:19-cv-02965 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | |
| | ) | |
| PROGRESSIVE SELECT INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT PROGRESSIVE SELECT INSURANCE COMPANY'S MOTION TO DISMISS AND TO STRIKE THE NATIONWIDE CLASS ALLEGATIONS

This putative insurance class action arises out of Plaintiff's claim that Progressive Select Insurance Company ("Progressive") breached his auto policy by not including certain fees (title, registration, license plate, and documentation/processing fees) associated with replacing a vehicle when it paid his total loss insurance claim. (*See* Compl. ¶¶ 1, 22, 36.) Plaintiff's claim fails as a matter of law because the auto policy provides an agreed method for calculating the loss that does not include payment of these fees. As a result, Plaintiff's claim should be dismissed.

Plaintiff's claim boils down to the assertion that certain fees associated with buying and driving a *new* vehicle are part of the "actual cash value" Progressive agreed to pay for a total loss. (*See* Compl. ¶¶ 36–38.) But the plain and unambiguous Policy language provides the method for calculating actual cash value. It determines actual cash value by the value of the *damaged* vehicle when the loss occurred. The Policy provides: "The actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs." (Policy, Part IV.2(g).) Title, registration, license plate, and documentation/processing fees are *replacement costs* that do not affect the value of the damaged vehicle when the loss occurred. *See, e.g.*, *Thompson v. Progressive*

*Universal Ins. Co.*, No. 19-CV-150-WMC, 2019 WL 6037367, at *4 (W.D. Wis. Nov. 14, 2019) (holding identical policy language does not "require reimbursement of sales tax, registration fees or other costs that might be incurred in actually purchasing a replacement vehicle"). The Parties' contract thus does not include payment of the fees Plaintiff seeks.

Nor does any Florida statute[1] require Progressive to pay those fees. Section 626.9743 of the Florida Unfair Insurance Trade Practices Act allows an insurer to use one of several methods to "adjust[] and settle[] first-party motor vehicle total losses on the basis of actual cash value or replacement with another of like kind and quality." Those methods include any method agreed to by the insured, or any method under which the insurer supports its value determination with a written itemization of any deductions and their amounts. Fla. Stat. § 626.9743(5)(c)&(d). Progressive complied with both methods, neither of which require payment of title, registration, license plate, and documentation/processing fees. Progressive's method was agreed to by the insured because it appeared in the Policy; and Progressive supported its actual cash value determination with documentation retained in the claims file through the Settlement Summary, which was attached to the Complaint as Exhibit B. Because Progressive's method for determining actual cash value does not require payment of fees, and Florida law does not superimpose any such requirement on Progressive's insurance policies, Plaintiff's claim should be dismissed.

At the very least, Plaintiff's nationwide class allegations should be stricken. Plaintiff does not (and cannot) allege that Progressive Select issues insurance policies nationwide; it is licensed to do business in only four states. And the wide variation in state laws on payment of these fees Plaintiff seeks would bar certification of a national class in any event. Thus, the Court should strike

---

[1] Because Progressive issued a Florida policy to a Florida resident, Florida law controls the interpretation of the Policy. *See infra* Section II.D. This does not appear to be in dispute. (*See* Compl. ¶ 19–23 (citing Florida law).)

2

these national class allegations now before the parties and the Court expend substantial time and resources on a fatally flawed effort to certify a nationwide class.

I.    **BACKGROUND**

    A.    **Plaintiff's Complaint**

Plaintiff totaled his 2013 Audi Q5 (the "Insured Vehicle"), insured by Progressive, in July 2019. (Compl. ¶¶ 16–18.) Progressive determined that Plaintiff's Insured Vehicle was a total loss and paid him its actual cash value of $15,789.40, plus $969.21 for sales tax but no amount for fees. (*Id.* ¶ 18; Compl. Ex. B.)

Plaintiff claims that Progressive breached the Policy and Florida law by failing to include fees associated with buying and driving a replacement vehicle—including title transfer fees, tag transfer fees, and documentation or processing fees[2]—in this actual cash value payment. (*See, e.g.*, Compl. ¶¶ 1–2, 14, 36.) In Plaintiff's view, these fees are part of an insured vehicle's actual cash value because the policy "does not define ACV" and, "[a]part from the reference to any applicable deductible, no other reductions to the ACV are specified." (*Id.* ¶ 12.) Yet Plaintiff admits that, under the Policy, actual cash value is "determined by the market value, age and condition of the vehicle at the time the loss occurs." (*Id.*) And Plaintiff does not allege that the fees he seeks

---

    2    Some of Plaintiff's allegations refer to sales tax. (*See, e.g.*, Compl. ¶ 12 ("Policy does not define ACV or market value, nor does it address sales tax, fees, or other reasonable expenses to replace the lost vehicle."); ¶ 21 ("Florida law imposes mandatory sales tax and title transfer fees for the replacement of all vehicles whether leased or owned."); ¶ 30(b)(1) ("whether Progressive's contractual agreement obligated it to pay reasonably incurred fees and taxes when making a payment for total loss based on ACV").) But the breach of contract claim does not. (*Id.* ¶¶ 33–39.) Plaintiff, however, admits his total loss settlement payment included sales tax. (*Id.* ¶ 18; Compl. Ex. B.) Progressive thus assumes that Plaintiff's claim is limited to title, registration, license plate, and documentation/processing fees and Plaintiff made an error in pleading his case.

somehow were relevant to the market value, age, or condition of his Insured Vehicle when the loss occurred. (*Id.* ¶¶ 12–14.)

Aside from his own breach-of-contract claim, Plaintiff also seeks to represent a national Class of "[a]ll persons in the United States who insured a vehicle for physical damage coverage under a Progressive auto policy and suffered a first-party total loss of a covered vehicle at any time since December 9, 2011, and whose claims were adjusted by Progressive as a total loss claim but, as part of the claim settlement, and were not paid state mandated or other necessary costs of replacing the vehicle." (Compl. ¶ 28.)

### B.    **The Progressive Policy**

Progressive issued Auto Policy No. 929237579 to Plaintiff (the "Policy"), a certified copy of which is attached as Exhibit 1.[3] Part IV addresses coverage for Damage to a Vehicle and provides the limit of liability "is the *lowest of*":

    a.  the *actual cash value* of the stolen or damaged property *at the time of the loss* reduced by the applicable deductible;
    b.  the amount necessary to replace the stolen or damaged property reduced by the applicable deductible; . . . .

(Part IV.1 (italicized emphasis added).) The Policy also explains how Progressive calculates actual cash value: "The actual cash value is determined by the market value, age, and condition *of the vehicle at the time the loss occurs*." (Part IV.2(g) (emphasis added).)

---

[3]    "When 'a document is referred to in the complaint and is central to the plaintiff's claim,' . . . 'the defendant may submit an authentic copy to the court to be considered on a motion to dismiss and the court's consideration of the document does not require conversion of the motion to one for summary judgment.'" *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (quoting 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.30[4] (3d ed. 1998)); *see also Bailey v. Hartford Life & Accident Ins. Co.*, No. 5:15cv406, 2016 WL 760431, at *3 (N.D. Ohio Feb. 26, 2016) ("A properly authenticated copy of the Policy or policy terms . . . would not be considered 'matters outside the pleadings' for purposes of a Rule 12(b)(6) motion.").

II. **ARGUMENT**

A. **Progressive does not have a contractual obligation to pay title, registration, license plate, and documentation/processing fees.**

The Policy's method for calculating the actual cash value of an insured vehicle does not require Progressive to pay any fees associated with buying and driving a new one, including the fees Plaintiff seeks here.

Insurance policies, like all contracts, are enforced according to their terms. *Fabricant v. Kemper Independence Ins. Co.*, 474 F. Supp. 2d 1328, 1330 (S.D. Fla. 2007). The scope of coverage is thus defined by the terms of the policy. *Siegle v. Progressive Consumers Ins. Co.*, 819 So.2d 732, 734–35 (Fla. 2002). If those terms are plain and unambiguous, the policy is enforced as written. *Id.* "[C]ourts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000); *see also Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So.2d 938, 941 (Fla.1979) (noting that every provision in a contract should be given meaning and effect and apparent inconsistencies reconciled if possible).

Here, the parties' contract tells Progressive how to determine the actual cash value of a total loss vehicle: "[t]he actual cash value is determined by the market value, age, and condition *of the vehicle at the time the loss occurs*." (Policy, Part IV.2(g) (emphasis added).) None of the fees sought by Plaintiff have any bearing on "the market value, age, and condition of the [insured] vehicle at the time the loss occurs." Instead, as Plaintiff concedes, these are replacement costs associated with buying and driving a new vehicle. (*See, e.g.*, Compl. ¶ 14 ("Those mandatory costs are, in actuality, *part of the replacement cost* of every total vehicle"); ¶ 22 ("[so-called documentation fees or processing fees] are reasonably likely to be *incurred in replacing* the insured vehicle"); ¶ 36 ("Plaintiff and the other Class members were each owed the ACV of their

vehicles, including mandatory title, registration and license plate fees, as well as other fees reasonably likely to be *incurred in replacing* the vehicle") (emphases added). Because costs associated with a *new* vehicle are not part of the actual cash value of the *damaged* vehicle, Progressive has no contractual obligation to pay those amounts.

The rest of the Policy confirms that costs associated with buying a replacement vehicle are not part of the actual cash value of the Insured Vehicle. The Policy distinguishes between replacement cost and actual cash value, and limits Progressive's liability to the lesser amount. The Policy provides:

> The limit of liability for loss to a **covered auto**, **non-owned auto**, or **custom parts or equipment** is the *lowest of*:
> a.  the *actual cash value* of the stolen or damaged property *at the time of the loss* reduced by the applicable deductible;
> b.  the amount necessary to replace the stolen or damaged property reduced by the applicable deductible.
> c.  the amount necessary to repair the damaged property to its pre-loss condition reduced by the applicable deductible; or
> d.  the Stated Amount shown on the **declarations page** for a **covered auto**.

(Part IV.1 (italicized emphasis added).) Because the Policy says Progressive need only pay the lower of the actual cash value of the damaged vehicle or the amount necessary to replace it, the replacement cost cannot be the same as the actual cash value.

The only district court to address the unique language in the Progressive Policy made this very point, explaining that "the policy at issue expressly distinguishes between the ACV as determined by market value and the replacement value." *Thompson*, 2019 WL 6037367 at *3 (explaining that Progressive agreed to pay the *lesser* of "the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible" *or* "the amount necessary to replace the stolen or damaged property reduced by the applicable deductible"). The *Thompson* court then held that the Progressive Policy did not "require reimbursement of sales tax,

registration fees or other costs that might be incurred in actually purchasing a replacement vehicle." *Id.* at *4; *see also Singleton v. Elephant Ins. Co.*, No. 6:19-CV-00200-ADA, slip op. at *5–*7 (W.D. Tex. May 10, 2019), *appeal pending* (granting insurer's motion to dismiss and finding that neither the policy nor Texas law required reimbursement of transfer fees or other costs under nearly identical policy language); *Williams-Diggins v. Perm. Gen. Assurance Corp. of Ohio*, Cuyahoga C.P. No. CV-19-912705, slip op. (June 29, 2019) (finding dismissal appropriate where the policy defined ACV as "fair market value" because that amount "does not include sales taxes and fees") (attached as Exhibit 2); *Hines v. Victoria Fire & Cas. Co.*, Lake County C.P. No. 19CV001233, slip op. 3 (Feb. 4. 2020) (finding that neither the policy nor Ohio law required payment of title and registration fees under similar policy language because "those are costs associated with the ownership of a vehicle and do not affect the value of the vehicle") (Ohio law) (attached as Exhibit 3).

The same is true here. Because Plaintiff contractually agreed to accept *less* than the amount necessary to replace his damaged vehicle, his claim that Progressive breached the Policy by not including replacement fees in his actual cash value payment fails as a matter of law.

## B. Progressive complies with its statutory obligations in settling total loss claims.

Contrary to Plaintiff's allegations, Section 626.9743 of the Florida Unfair Insurance Trade Practices Act does not "require[] the ACV to incorporate costs reasonably likely to be incurred in vehicle replacement." (Compl. ¶ 23.) Instead, it allows insurers to use any one of several methods to "adjust[] and settle[] first-party motor vehicle total losses on the basis of actual cash value or replacement with another of like kind and quality," including:

> (c) When a motor vehicle is adjusted or settled on a basis that varies from the methods described in paragraphs (a) or paragraph (b), the determination of value must be supported by documentation, and any deductions from value must be itemized and specified in appropriate dollar amounts. The basis for such settlement shall be

7

explained to the claimant in writing, if requested, and a copy of the explanation shall be retained in the insurer's claim file.

(d) Any other method agreed to by the claimant.

Fla. Stat. § 626.9743. Neither method even mentions, much less requires, payment of fees.

Progressive complies with both methods. Progressive's method is necessarily agreed to by Plaintiff (per Fla. Stat. § 626.9743(d)) because it is in the Policy issued to him. (Policy, Part IV.1.) Progressive also complies with Section 626.9743(c), because it supports its actual cash value determination with documentation retained in the claims file. (*See* Compl. Ex. B.)

Because Progressive's method for determining actual cash value complies with Florida law and does not require payment of title, registration, license plate, and documentation/processing fees, Plaintiff's claim for payment of these fees must be dismissed.

## C.     Neither *Mills* nor *Glover* dictates a different result.

Plaintiff ultimately falls back on case law construing different policy language, alleging that Florida law requires "payment of costs reasonably likely to be incurred upon replacement." (Compl. ¶ 49 (citing *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1305 (11th Cir. 2008); *Glover v. Liberty Mut. Ins. Co.*, No. 19-21900, 2019 WL 4917063, at *8 (S.D. Fla. Oct. 4, 2019)). But the interpretation of different policy language says nothing about what Progressive has to pay under its Policy. For example, *Mills* addressed a Mobile Home Insurance Policy, 511 F.3d at 1302; it did not address transfer fees in the context of a total-loss vehicle, let alone analyze the method for determining actual cash value in the Policy. *Mills*, therefore, does not help Plaintiff's cause. Likewise, *Glover* addressed actual cash value under a policy that offered no guidance on how to calculate ACV. 2019 WL 4917063, at *8 (finding that because "[t]he Insurance Policy does not define ACV," the term should be "construed liberally in favor of the insured and strictly against the insurer").

8

As *Thompson* recognized, this lack of similarity in policy language means those cases offer no guidance on how to interpret Progressive's Policy. 2019 WL 6037367 at *2-3.

### D. Should Plaintiff's claim survive dismissal, Plaintiff's nationwide class action allegations must be stricken.

Even if the case is not dismissed, at the very least Plaintiff's nationwide class allegations should be stricken. Plaintiff purports to represent a national class of:

> All persons in the United States who insured a vehicle for physical damage coverage under a Progressive auto policy and suffered a first-party total loss of a covered vehicle at any time since December 9, 2011, and whose claims were adjusted by Progressive as a total loss claim but, as part of the claim settlement, and were not paid state mandated or other necessary costs of replacing the vehicle.

(Compl. ¶ 28.) The Court should strike the nationwide class allegations now, before the parties and the Court expend substantial time and resources litigating them, because Plaintiff's complaint alone (and the limited number of states in which Progressive Select does business) shows a nationwide class cannot be certified.

Federal Rule of Civil Procedure 12(f) allows courts to strike "from any pleading any insufficient defense or any redundant, impertinent, or scandalous matter." The Sixth Circuit has approved as "sound" a district court's decision to strike nationwide class allegations when certification of this class would pose insoluble problems apparent on the face of the pleading. *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946, 949 (6th Cir. 2011). That is the case here.

Class certification is available only if the claimant satisfies "two sets of requirements: (1) each of the four prerequisites under Rule 23(a), and (2) the prerequisites of one of the three types of class actions provided for by Rule 23(b)." *Pilgrim*, 660 F.3d at 945-46. Among the Rule 23(a) requirements are that common questions of law or fact exist, and the named plaintiff's claims

or defenses are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(2)-(3); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) ("A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." (internal quotation marks and citations omitted)).

A nationwide class could not satisfy the threshold commonality and typicality requirements because Progressive Select does not issue insurance policies in at least forty-six states. *See* Report of Examination of Progressive Select Insurance Company dated December 31, 2017, https://iop-odi-content.s3.amazonaws.com/static/Company/Examination+Reports/2017+Exams/Progressive+Select+12-31-17+exam+report.pdf  (Progressive Select is only licensed to do business in California, Florida, Maryland, and Ohio).[4] While Plaintiff assumes that "Progressive Corporation" has "13 million policies in force" nationwide, (Compl. ¶ 30(a)), he does not (and cannot) allege that Progressive Select itself issued all of those policies. That omission alone warrants striking the nationwide class allegations.

The class allegations also should be stricken due to variations in state law, which prevent common issues from predominating under Rule 23(b) and make national class resolution impractical. Plaintiff alludes to these differences, identifying only twenty-eight states with laws that supposedly "mandate[] that insurers pay all mandatory title, registration and license plate fees in connection with a total loss[.]" (Compl. ¶ 15.) Because (according to Plaintiff) thirty-two states

---

4    Under Federal Rule of Evidence 201, the court can take judicial notice of adjudicative facts, including "[p]ublic records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies." *Zino v. Whirlpool Corp.*, No. 5:11CV1676, 2017 WL 3219830, at *8 (N.D. Ohio July 27, 2017) (internal quotation marks and citation omitted). The Report of Examination was conducted by the Ohio Department of Insurance and is maintained on its website. Thus, the court can take judicial notice of the Report of Examination and may consider it at this stage of the proceedings. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001)).

do not mandate these payments, different laws would govern the claims of class members in over half the states.

Each class member's breach-of-contract claim would be governed by the law on mandatory costs and fees of the state in which their policy was issued. After all, a federal court sitting in diversity applies the choice-of-law analysis of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941); *Premium Freight Mgmt., LLC v. PM Engineered Sols., Inc.*, 906 F.3d 403, 406 (6th Cir. 2018). And Ohio analyzes the factors in Restatement (Second) of Conflicts of Law § 188 to determine the law that governs the rights and duties of parties to a contract. *See Nat'l Union Fire Ins. Co.*, 963 F.2d 148, 151 (6th Cir. 1992); *Nationwide Mut. Ins. Co. v. Ferrin*, 21 Ohio St.3d 43, 44–45, 21 OBR 328, 487 N.E.2d 568 (1986). In an insurance case, these factors lead to applying the law of the state where the insurance contract was made. *Miller v. State Farm Mut. Auto. Ins. Co.*, 87 F.3d 822, 827 (6th Cir. 1996).

*Pilgrim* affirmed a district court's order striking nationwide class allegations when, as here, "different laws would govern the class members' claims." 660 F.3d at 946. Even if there were factual overlap among the claims,[5] *Pilgrim* explained, this overlap was not "sufficient to overcome the key defect that the claims must be resolved under different legal standards." *Id.* at 948. *Pilgrim* broke no new ground on this point, as the Sixth Circuit cited "decisions of this court and several others" that refused to allow a nationwide class governed by the laws of different states. *Id.* Concerns with certifying a nationwide class under these circumstances include the "impossible task of instructing a jury on the relevant law," that the class would not be

---

5   Plaintiff alleges on "information and belief" that Progressive "engages in uniform and standard conduct in failing and refusing to pay full ACV to all claimants, including Plaintiff and the other Class members." (Compl. ¶ 26.) If the deficient class allegations were not dismissed, Progressive would show that, in fact, it complies with applicable law on mandatory fees and costs in each state in which it issues insurance policies.

11

"manageable," and that variations in state law would "overwhelm" common factual issues and make "national class resolution impractical." *Id.*

Those same concerns support striking the nationwide class allegations here. Indeed, the variation among state laws is greater than Plaintiff's Complaint suggests. Even within the twenty-eight states Plaintiff claims mandate payment of fees and costs, the statutes and regulations Plaintiff cites show different states require payment of different fees. The four states in which Progressive Select is licensed to do business, for example, vary widely on what fees and costs, if any, must be paid:

- o **California**: California requires an ACV settlement for a total loss vehicle to include all "one-time fees incident to transfer of evidence of ownership of a comparable automobile," as well as "license fee and other annual fees to be computed based upon the remaining term of the loss vehicle's current registration." Cal. Code Regs. tit. 10 § 2695.8(B).

- o **Florida**: Florida, on the other hand, does not require payment of fees. *See supra* discussion in Section II.B.

- o **Maryland**: Maryland requires payment of *transfer* fees, but not any *other* fees. Md. Code Regs. 31.15.12.04

- o **Ohio**: Ohio gives insurers two options for settling a total loss claim. Any insurer may (1) offer a replacement vehicle and pay all taxes and fees necessary to transfer ownership; or (2) offer a cash settlement for the actual cost to purchase a comparable vehicle, which does not include fees. *See* Ohio Admin. Code § 3901-1-54(H)(6)(c), (7)(f).

Because Progressive Select does not issue policies in at least forty-six states and state statutes and regulations on paying fees incident to buying a replacement vehicle vary widely, Plaintiff's nationwide class allegations should be stricken.

## III.   <u>CONCLUSION</u>

Progressive did exactly what the Policy and Florida law requires. Plaintiff's breach of contract claim should be dismissed because: (i) the Policy includes an agreed method for calculating actual cash value that does not include payment of the fees Plaintiff seeks; and (2) no

Florida law requires payment of those fees. As a result, Plaintiff's Complaint fails to state a claim for relief.

At a minimum, Plaintiff's nationwide class allegations should be stricken because Progressive Select does not issue insurance policies nationwide and the laws on payment of replacement fees vary widely across the country.

<div style="margin-left:40%">

Respectfully submitted,

*/s/ Jennifer L. Mesko*
Karl A. Bekeny (0075332)
Benjamin C. Sassé (0072856)
Jennifer L. Mesko (0087897)
Courtney E. S. Mendelsohn (0091788)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Telephone:    216.592.5000
Facsimile:    216.592.5009
E-mail:        karl.bekeny@tuckerellis.com
                benjamin.sasse@tuckerellis.com
                jennifer.mesko@tuckerellis.com
                courtney.mendelsohn@tuckerellis.com

*Attorneys for Defendant Progressive Select Insurance Company*

</div>

13

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 27, 2020, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

*/s/ Jennifer L. Mesko*
Karl A. Bekeny (0075332)
Benjamin C. Sassé (0072856)
Jennifer L. Mesko (0087897)
Courtney E. S. Mendelsohn (0091788)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Tel:          216.592.5000
Fax:          216.592.5009
E-mail:      karl.bekeny@tuckerellis.com
              benjamin.sasse@tuckerellis.com
              jennifer.mesko@tuckerellis.com
              courtney.mendelsohn@tuckerellis.com

*Attorneys for Defendant Progressive Select Insurance
Company*

4573589.1