# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| THOMAS J. PIECZONKA, individually and on behalf of all others similarly situated, | Case No.: 1:19-cv-02965 |
| Plaintiff, | **CLASS ACTION** |
| v. | **District Judge James S. Gwin** |
| PROGRESSIVE SELECT INSURANCE COMPANY, | |
| Defendant. | |

### PLAINTIFF THOMAS J. PIECZONKA'S OPPOSITION TO DEFENDANT PROGRESSIVE SELECT INSURANCE COMPANY'S MOTION TO DISMISS AND TO STRIKE THE NATIONWIDE CLASS ALLEGATIONS

Plaintiff Thomas J. Pieczonka ("Plaintiff"), by and through his attorneys, submits his Opposition to Defendant Progressive Select Insurance Company's ("Progressive" or "Defendant") Motion to Dismiss and to Strike the Nationwide Class Allegations.

## I.   INTRODUCTION

This class action lawsuit arises out of Progressive's uniform and systematic policy of underpaying insurance claims for first-party total loss claims based on a flawed method of calculating the vehicle's actual cash value ("ACV") that omits certain expenses reasonably likely to be incurred in the purchase of a replacement vehicle. Plaintiff, on behalf of himself and all others similarly situated, brings this breach of contract class action against Progressive to recover amounts that Defendant was obligated to pay under its contracts of insurance.

ACV has a well-settled meaning in Florida. ACV is defined as replacement cost minus depreciation. *Trinidad v. Florida Peninsula Ins. Co.*, 121 So.3d 433, 443 (Fla. 2013). "Sales tax and fees are costs an insured is reasonably likely to incur in replacing [a] vehicle, and therefore

are components of actual cash value." *Sos v. State Farm Mut. Auto. Ins. Co.*, 396 F. Supp. 3d 1074, 1081 (M.D. Fla. 2019).

Progressive calculated the ACV of Plaintiff's vehicle without including full payments for reasonably likely expenses and costs to purchase a replacement vehicle—including taxes, mandatory title fees, tag fees, and documentation/processing fees (the "Expenses"). According to Progressive's Motion to Dismiss, Progressive omitted full payment of the Expenses from its payment of ACV to Plaintiff and the other Class members because ACV is defined differently in its Policy from the well-settled definition above, which requires Expenses to be included in ACV. However, this departure from the norm was not explained in Progressive's settlement summary with Plaintiff.

Progressive admits that it carries a heavy burden to show that ACV is clearly and unambiguously defined in its Policy to exclude the Expenses reasonably likely to be incurred in replacing a lost vehicle. Yet, Progressive points to only one passing reference in the Policy to ACV, which states "The actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs." *See* Policy, Part IV Limits of Liability (2)(g), at page 33, attached as <u>Exhibit A</u> to Compl. Progressive places more weight on this statement than it will bear. Progressive's argument upsets the orderly structure of the Policy—which must be read as a whole—and fails to *unambiguously* exclude the Expenses from its "definition" of ACV, as it must. Progressive's argument also fails to account for the fact that Progressive offered to pay a certain amount of taxes to Plaintiff (which, under Progressive's argument, would *not* have been required). For these reasons and more, the Motion to Dismiss should be denied.

In addition, Progressive's request to strike Plaintiff's nationwide class allegations should be denied as premature. The rigorous analysis that is required on such matters cannot be conducted

before an opportunity to conduct discovery. As many courts have done in similar circumstances, the Court should defer any decision on class certification until Plaintiff has had an opportunity to conduct discovery.

## II. FACTUAL BACKGROUND

Plaintiff is insured under an auto insurance policy through Progressive providing coverage for the Policy Period of April 24, 2019 through October 24, 2019. The policy contract is Form 9611D FL, plus the endorsement A261 (the "Policy"). Compl. ¶ 9.

Pursuant to standardized language in Part IV of the Policy, collision coverage and comprehensive coverage require Progressive to "pay for sudden, direct and accidental loss" to a covered auto, including an attached trailer or a non-owned auto, as well as custom parts or equipment. The Policy states:

> The limit of liability for loss to a covered auto, non-owned auto, or custom parts or equipment is the lowest of:
>
> a. The actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible;
>
> b. The amount necessary to replace the stolen or damaged property reduced by the applicable deductible;
>
> c. The amount necessary to repair the damaged property to its pre-loss physical condition reduced by the applicable deductible; or
>
> d. The Stated Amount shown on the declarations page for that covered auto.

Compl. ¶ 11.

In Part IV, under the heading "Limits of Liability," the Policy states that ACV is determined by the market value, age, and condition of the vehicle at the time the loss occurs. Apart from the reference to any applicable deductible, no other reductions to the ACV are specified. The

3

Policy does not define ACV or market value, nor does it address tax, mandatory title and tag fees, or other reasonable expenses to replace the lost vehicle. Compl. ¶ 12.

Plaintiff experienced a covered loss during the coverage period on July 1, 2019, and reported the loss on July 2, 2019. Compl. ¶ 17. Progressive declared the insured vehicle a total loss. In the Settlement Summary, Progressive agreed to pay a total of $15,789.40, based on the actual cash value of Plaintiff's vehicle at the time of the loss (reduced by the applicable deductible), which included an amount of $969.21 for sales tax, but $0 for fees or other expenses. Compl. ¶ 18, and Exhibit B thereto.

Vehicles must be properly titled in order to be legally driven on roadways. Fla. Stat. § 320.02 ("every owner or person in charge of a motor vehicle that is operated or driven on the roads of this state shall register the vehicle in this state."). Vehicles also must have proper license plates (or tags) in order to be legally driven on roadways. See Fla. Stat. § 320.0609.

Also, Florida law imposes mandatory sales tax and title transfer fees, and tag fees for the replacement of all vehicles, whether leased or owned. See Fla. Stat. § 212.05 (sales tax); § 319.34 (title transfer fee). These taxes and fees are necessarily included in the replacement cost of a total loss vehicle. Compl. ¶ 22.

In addition, it is customary in Florida for car dealerships to charge so-called documentation fees or processing fees. The average documentation/processing fee in Florida is approximately $670. See https://www.autolist.com/guides/dealer-fees-florida (last visited Dec. 6, 2019). These taxes, fees, and charges are reasonably likely to be incurred in replacing the insured vehicle. Compl. ¶ 22.

Progressive failed and refused to pay Plaintiff the full amount of his Expenses to which Plaintiff was entitled under the Policy and the law. Compl. ¶ 25. On information and belief,

4

Progressive engages in uniform and standard conduct in failing and refusing to pay full ACV to all claimants, including Plaintiff and the other Class members. Compl. ¶ 26. Plaintiff brings this Complaint for breach of contract for the sums due Plaintiff and the other Class members under their Policies, in an amount including the Expenses that Progressive wrongfully omitted from its calculation of actual cash value.

### III. LEGAL STANDARD

To survive a motion to dismiss, a complaint must provide "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." *Doe v. Baum*, 903 F.3d 575, 580 (6th Cir. 2018) (quoting Fed. R. Civ. P. 8(a)(2)). Factual allegations contained in a complaint must raise a right to relief above the speculative level. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). *Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *ARcare, Inc. v. Centor U.S. Holdings, Inc.*, 272 F. Supp. 3d 1015, 1017 (N.D. Ohio 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). As stated by the court in *Baum*:

> When evaluating a complaint's sufficiency, courts use a three-step process. First, the court must accept all of the plaintiff's factual allegations as true. Second, the court must draw all reasonable inferences in the plaintiff's favor. *Id.* And third, the court must take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief. If it is at all plausible (beyond a wing and a prayer) that a plaintiff would succeed if he proved everything in his complaint, the case proceeds.

*Baum*, 903 F.3d at 581 (internal citations omitted).

IV.     ARGUMENT

A.     **Plaintiff Adequately Pleads that Progressive was Required to Pay the Full Amount for Expenses Plaintiff Would Incur in Obtaining a Replacement Vehicle**

Plaintiff has adequately alleged that Defendant was required to pay Plaintiff amounts for his Expenses and did not do so in breach of the Policy.

"Insurance contracts are construed according to their plain meaning." *Mills v. Foremost Ins. Co.*, 611 F.3d 1300, 1304 (11th Cir. 2008). In construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect. *Auto-Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla. 2000). "If the language used in an insurance policy is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning of the language used so as to give effect to the policy as it was written." *Trinidad v. Florida Peninsula Ins. Co.*, 121 So.3d 433, 441 (Fla. 2013). Provisions in an insurance policy must be construed and applied to be in full compliance with the Florida Statutes. *Id.* at 441. "The laws of Florida are a part of every Florida contract and govern the substantive issues arising in connection with those contracts." *Glover v. Liberty Mut. Ins. Co.*, F. Supp. 3d 1161, 2019 WL 4917063, at *5 (S.D. Fla. 2019); *see also Bastian v. United Servs Auto. Ass'n*, 150 F. Supp. 3d 1284, 1294 (M.D. Fla. 2015) ("The Court therefore presumes that the parties entered into the contract with knowledge of the statutory provisions, and those provisions became part of the contract.").

If the policy language is susceptible of more than one interpretation, however, the ambiguity must be resolved "liberally in favor of the insured and strictly against the insurer who prepared the policy." *Travelers Indem. Co. v. PCR Inc.*, 889 So.2d 779, 788 (Fla. 2004) (quoting *Prudential Property & Cas. Ins. Co. v. Swindal*, 622 So.2d 467, 470 (Fla. 1993)). Florida law is

equally well-settled that coverage clauses are "construed in the broadest possible manner" in order to effect "the greatest extent of coverage." *Hudson v. Prudential Prop. & Cas. Ins. Co.*, 450 So.2d 565, 568 (Fla. App. 1984) (coverage must be construed broadly and exclusions narrowly).

Actual cash value ("ACV") has a settled meaning in Florida insurance law. "When faced with a policy leaving actual cash value undefined, Florida courts have found the term to mean replacement cost minus depreciation." *Sos v. State Farm Mut. Auto. Ins. Co.*, 396 F. Supp. 3d 1074, 1079 (M.D. Fla. 2019). Under an actual cash value policy, costs "reasonably likely" to be incurred in the replacement must be included. *Trinidad*, 121 at 438; *see also Mills*, 511 F.3d at 1306 ("Actual cash value payment includes a general contractor's overhead and profit charges in circumstances where the policyholder would be reasonably likely to need a general contractor in repairing or replacing the damaged property in issue.").

Accordingly, Florida courts have held that ACV includes sales tax, title fees, and tag fees in payment of first-party motor vehicle total loss claims. *See, e.g.*, *Sos*, 396 F. Supp. 3d at 1081 ("sales tax and fees are costs an insured is reasonably likely to incur in replacing his leased vehicle, and therefore are components of actual cash value under the Policy."); *Glover*, 2019 WL 4917063 at *8 (same).

The insurance policy in *Glover* contained nearly identical limits on liability as Progressive's Policy. *Id.* at *4. In *Glover*, the insurer was obligated to pay the lesser of the ACV or the amount necessary to repair or replace the property with property of like kind and quality. *Id.* The court concluded that "the statutory method for determining ACV described in [Florida Statutes] section 626.9743(5) serves to furnish a definition of the undefined ACV" in the policy and describes what items are included in ACV. *Id.* The court then concluded that expenses reasonably likely to be incurred in replacing the vehicle were part of the statutory definition of

7

ACV in section 626.9743(5) of the Florida Statutes and incorporated into the insurance policy. *Id.* at *7.

Here, as in *Glover* and *Sos*, the definition of ACV provided by Florida law governs and provides the meaning of ACV in the Policy. Under Florida law, ACV includes payment of the Expenses. Defendant's refusal to pay the Expenses in full as a component of ACV, as that term is interpreted under Florida law, was a breach of the Policy.

**B.     The Policy Does Not Provide a Definition of ACV That Excludes the Expenses**

Progressive argues that unlike the policies in *Sos* and *Glover*, Progressive meant something different when it used the phrase ACV in the Policy. Progressive argues that the statement in its Policy that reads "[t]he actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs" supplants the ordinary understanding under Florida law, discussed above, that ACV means replacement costs minus depreciation and includes the Expenses. Further, Progressive reads in this ACV "definition" an exclusion of payments for items reasonably likely to be incurred in replacing the lost vehicle, such as the Expenses. Progressive contends that this limit of coverage is not in violation of section 626.9743(5)(a), and is allowed under section 626.9743(5)(c) and (d), which allows for coverage under any other method agreed to by the claimant, so long as the settlement is thoroughly documented and explained by the insurer. *See* Fla. Stat. § 626.9743(5)(c),(d). Progressive's argument upsets the structure of the Policy, reads into the language exclusions that are not stated, implausibly construes its Policy language, and cannot be reconciled with the facts regarding what Progressive actually agreed to pay Plaintiff.

The Policy, read as a whole, undermines Progressive's argument. Although the Policy includes several sections devoted to "General Definitions" and "Additional Definitions,"

8

Progressive did not place the statement in any of those sections. Rather, the statement appears in a section enumerating "Limits of Liability" in section 2(g). *See* Policy at p. 33.

Furthermore, all of the definitions in the Policy use the verb "means" when supplying a definition, whereas the statement Progressive relies on uses the passive phrase "is determined by" and sets forth a non-exhaustive list of factors. Even if the statement were generously construed to be a definition of ACV, the statement is silent about the Expenses. Against the backdrop of a well-settled meaning of ACV in Florida, if Progressive had wanted to provide ACV coverage that excluded the Expenses, it needed to make the definition and its departure from ACV's ordinary meaning under Florida law significantly clearer. *See Mills*, 511 F.3d at 1305 (reasonably likely replacement costs, such as overhead, profit, and taxes, are components of ACV unless "unambiguously excluded"); *Bastian*, 150 F. Supp. 3d at 1295 ("If an insurer wishes to avail itself of [the elective provision of the statute], it must expressly elect this option in its policies so as to provide its insured with due notice."). Progressive invited Plaintiff to interpret ACV as replacement cost minus depreciation when it drafted its Policy using a phrase with a well-settled meaning, failed to include language in its Policy that would alert a reasonable policyholder as to Progressive's peculiar interpretation of ACV, and failed to expressly and unambiguously exclude the Expenses from coverage.

Furthermore, Progressive's offer to pay Plaintiff $969.21 in "taxes" is inexplicable under Progressive's proposed interpretation of ACV.[1] *See* Settlement Summary, attached as <u>Exhibit B</u>

---

[1] Plaintiff's breach of contract claim seeks the full value of the ACV to which he is entitled, including any shortfall attributable to underpayments for taxes. *See* Compl. ¶ 38. ("Progressive's failure to pay the full amount of ACV constitutes a material breach of contract with Plaintiff and the other Class members); Compl. ¶ 39 ("As a result of these contractual breaches, Plaintiff and the other Class members have been damaged, and are entitled to sums representing the amounts for unpaid fees and costs that are incorporated into ACV."). While Plaintiff acknowledges that a certain amount of money was paid for sales tax, Plaintiff does not concede that the amount was the full amount to which he is entitled. Plaintiff was not required to set forth specific amounts for each item of loss in his pleadings. *See Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018) (citing Fed. R. Civ. P. 54(c)) ("the prevailing party receives the relief to which it is entitled, whether or not the pleadings have mentioned that relief.").

to Compl. Progressive admits in its Answer to the Complaint that this payment is for sales taxes. *See* Progressive's Answer ¶ 18. However, Progressive argues in its Motion that sales taxes are part of the Expenses that are *excluded* from ACV because they are not part of the market value of the totaled vehicle. Progressive supplies no textual justification for paying an amount attributable to sales tax and not the other Expenses under its proposed ACV definition. Progressive's argument in its Motion is contradicted by its actions (*i.e.*, paying an amount for sales tax as part of the ACV).

Progressive relies on *Thompson v. Progressive Universal Insurance Company*, No. 19-CV-150-WMC, 2019 WL 6037367 (W.D. Wis. Nov. 24, 2019), a case decided four months *after* Progressive provided Plaintiff with its settlement summary in this case. In *Thompson*, the defendant advanced the same interpretation of ACV that Progressive does here, except that Thompson was paid neither "sales tax nor title and registration fees imposed in purchasing a replacement vehicle." *See Thompson*, 2019 WL 6037367, at *1. To the contrary, here, Plaintiff *was* paid an amount for sales tax, but not for any other Expenses. Thus, Progressive could not have had the *Thompson* court's definition in mind when it settled Plaintiff's claim, let alone when it entered into the Policy.

Progressive's course of dealing—its inclusion of a payment for sales tax as part of ACV— is better evidence that Progressive interpreted its Policy as providing coverage of a first-party total loss pursuant to Section 626.9743(5)(a), which provides:

> (5) When the insurance policy provides for the adjustment and settlement of first-party motor vehicle total losses on the basis of actual cash value or replacement with another of like kind and quality, the insurer shall use one of the following methods:
>
> (a) The insurer may elect a cash settlement based upon the actual cost to purchase a comparable motor vehicle, including sales tax, if applicable pursuant to subsection (9).

Fla. Stat. § 626.9743(5)(a).

10

ACV in section 626.9743(5)(a) includes costs associated with Expenses as costs reasonably likely to be incurred in replacing the loss. *See Glover*, 2019 WL 4917063, at *8 ("the failure to include mandatory state fees constitutes a breach of the promise to pay ACV").

The Court should decline to follow *Thompson* for another reason. *Thompson* engaged in flawed reasoning when it concluded that ACV had to exclude taxes and fees by implication because the policy expressly distinguished between the ACV and a replacement amount by providing that the lesser of either was the limit of the insurer's liability. *See Thompson*, 2019 WL 6037367, at *3. This reasoning violates the fundamental precept that ambiguities in an insurance contract are construed against, rather than in favor, of the drafter. *See Swindal*, 622 So.2d at 470. Moreover, Florida courts have already noted that the difference between ACV and replacement cost is the inclusion of depreciation, not the exclusion of reasonably necessary costs in replacing the lost property. *See Goff v. State Farm Fla. Ins. Co.*, 999 So.2d 684, 689 (Fla. Ct. App. 2009). *Thompson* is inapt and does not control the decision here.

Indeed, the Fifth Circuit stated the following with respect to "actual cash value" when resolving a similar dispute:

> Although the policy defines certain terms, it does not define "actual cash value." Instead, it states only that the "actual cash value is determined by the market value, age and condition" of the vehicle at the time of the accident. We thus construe "actual cash value" according to its "ordinary and generally accepted meaning."

*Singleton v. Elephant Ins. Co.*, 19-50470, 2020 WL 1280781, at *2 (5th Cir. Mar. 18, 2020).

Progressive's argument that ACV possesses a meaning other than the ordinary and generally accepted meaning under Florida law is unavailing. The Policy obligates Progressive to pay ACV, which—under Florida law—includes amounts for the Expenses. Progressive failed to

11

pay the full amount of Expenses to Plaintiff, and in doing so, breached the Policy and caused injury to Plaintiff and the other Class members.

Accordingly, Progressive's Motion to Dismiss should be denied.

### C. Progressive's Premature Challenges to Plaintiff's Proposed Class Allegations Should Be Rejected

Progressive also moves to strike the nationwide class allegations. Progressive's argument is premature. Its Motion to Strike nationwide class allegations should be denied.

Fed. R. Civ. P. 12(f) provides that "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Courts should exercise caution when striking class action allegations based solely on the pleadings, because class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Smith v. Cash Am. Int'l, Inc.*, No. 1:15-cv-00760-MRB, 2019 WL 2352921, at *2 (S.D. Ohio June 4, 2019). "To say that a defendant may freely move for resolution of the class-certification question whenever it wishes does not free the district court from the duty of engaging in a 'rigorous analysis' of the question." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011). Courts often reserve issues of class certification until after discovery so that there is adequate "foundation to conduct the 'rigorous analysis' required by Rule 23." *Geary v. Green Tree Servicing, LLC*, No. 2:14-cv-00522, 2015 WL 1286347, at *17 (S.D. Ohio Mar. 20, 2015); *see also Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 516 (S.D. Ohio 2012); *Eliason v. Gentek Building Prods., Inc.*, No. 1:10-cv-2093, 2011 WL 3704823, at **2–3 (N.D. Ohio Aug. 23, 2011) ("motion to strike class allegations is not a substitute for class determination"); *Faktor v. Lifestyle Lift*, No. 1:09-cv-511, 2009 WL 1565954, at *2 (N.D. Ohio June 3, 2009) (attacks on class certification prior to case management conference were premature).

As Progressive concedes, the Sixth Circuit has approved of striking class allegations at an early stage *only* where the proposed class would pose insoluble problems apparent on the face of the pleading. *Pilgrim*, 660 F.3d at 946. A court has authority to strike class allegations prior to the close of discovery when (1) the complaint itself demonstrates the requirements for maintaining a class action cannot be met, and (2) further discovery will not alter the central defect in the class claim. *Smith*, 2019 WL 2352921, at *2; *see also Progressive Health & Rehab Corp. v. Quinn Med., Inc.*, 323 F.R.D. 242, 244 (S.D. Ohio 2017) ("If the Court determines that the Complaint does not allege facts that would satisfy the demands of Rule 23, it may strike class action allegations prior to any motion for class certification.").

Progressive has not identified any flaw apparent on the face of the Complaint. Progressive posits that differences in state law require striking the national class allegations. However, in *Sullivan v. Gov't Employees Ins. Co.*, No. 6:17-cv-891-Orl-40KRS, 2018 WL 3650114, at * 8 (S.D. Fla. Apr. 6, 2018), the court denied a similar motion to strike a nationwide class allegation in a very similar case, reasoning that the "case is not yet in the proper procedural posture to determine whether class treatment of the nationwide class is appropriate." Here, the Court should exercise the same discretion and allow "the shape and form of a class action" to evolve to the extent necessary through the process of discovery. *See id.* at *9. "Depending on how discovery develops, material differences among the state statutes may fall away or at least become more manageable." *Id.*

Moreover, nationwide classes are regularly certified in cases like this involving standard insurance policy form language, so it would be an extraordinary step for the Court to summarily deny such a class based solely on Plaintiff's Complaint. *See Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 74 (E.D.N.Y. 2004) (because key terms in the insurance policy—deductible, actual

13

cash value, and loss—are substantively similar, if not identical, such policies can be considered uniform or form contracts and "present the classic case for treatment as a class action"); *McKeage v. TMBC, LLC*, 847 F.3d 992, 999 (8th Cir. 2017) ("Although the documents TMBC prepared for individual customers varied at times, the district court correctly determined that the variety of service and the differences between contracts were not distinct enough to decertify the case as a class action"); *Klay v. Humana, Inc.*, 382 F.3d 1241, 1263 (11th Cir. 2004) ("A breach is a breach is a breach, whether you are on the sunny shores of California or enjoying a sweet autumn breeze in New Jersey."). Here, Plaintiff has alleged that all Class members' contracts contain the same provisions, and Progressive's conduct with respect to each Class member was uniform. Compl. ¶ 10.

Progressive attempts to introduce affirmative evidence relating to its business that are not directed to any substance of Plaintiff's Complaint. Its Motion to Strike class allegations has not met the high standard for striking a matter that is redundant, immaterial, impertinent, or scandalous, and should be denied.

## V. CONCLUSION

For the reasons set forth above, Progressive's Motion to Dismiss and to Strike Nationwide Class Allegations should be denied.

Respectfully submitted,

*/s/ Marc E. Dann*
Marc E. Dann (0039425)
Brian D. Flick (0081605)
Emily White (0085662)
**DANNLAW**
P.O. Box 6031040
Cleveland, Ohio 44103
(216) 373-0539 telephone
(216) 373-0536 facsimile
notices@dannlaw.com

Thomas A. Zimmerman, Jr. (*pro hac vice*)
*tom@attorneyzim.com*
Jeffrey D. Blake (*pro hac vice*)
*jeff@attorneyzim.com*
**ZIMMERMAN LAW OFFICES, P.C.**
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
*www.attorneyzim.com*

*Counsel for Plaintiff and the putative Class*

## CERTIFICATION OF SERVICE

I Hereby certify that on March 27, 2020, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all counsel of record by operation of the Court's CM/ECF system.

>/s/ *Marc E. Dann*
>Marc E. Dann (0039425)