IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THOMAS J. PIECZONKA, individually and on behalf of all others similarly situated, | ) CASE NO. 1:19-cv-02965 )  ) JUDGE JAMES S. GWIN |
| Plaintiff, | ) ) |
| v. | ) ) |
| PROGRESSIVE SELECT INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) ) |

### DEFENDANT PROGRESSIVE SELECT INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS CLAIM AND TO STRIKE THE NATIONWIDE CLASS ALLEGATIONS

Plaintiff doubles down on his claim that Progressive is required to pay replacement costs, despite Progressive's policy language that expressly provides otherwise. (*See* Pl's Opp. to Def's Mot to Dismiss and to Strike the Nationwide Class Allegations, Doc. 12, PageID 204–06 (hereinafter "Pl's Opp.").) As Progressive explained, the Policy's unique method for determining actual cash value focuses solely on the damaged vehicle at the time of loss: "The actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs." (Def's Mot. to Dismiss, Doc. 10, PageID 117–19; Policy, Doc. 10-1, PageID 166 (Part IV.2(g)).) As a result, an "actual cash value" payment under the Policy does not include fees (like title and tag transfer or documentation/processing fees) that may be paid later with a new vehicle.

Plaintiff insists, though, that because this method is not labeled a "definition" of actual cash value, the Court should ignore it and apply the default rule for calculating actual cash value under Florida law. (Pl's Opp. at PageID 198–99, 204–06.) That makes no sense, and Plaintiff cites no law that would allow a court to ignore a policy term. The Policy's method for calculating actual cash value is clear and must be enforced as written.

Nor is it true that this method is "silent" on whether fees associated with a new vehicle are part of an actual cash value payment. (Pl's Opp. at PageID 205.) Because the fees sought are costs associated with the purchase of a *replacement* vehicle, they have no bearing on the value of the car at the time of the loss.

Plaintiff next tries to discount this policy language by claiming Progressive's payment of sales tax to Plaintiff[1] is inconsistent with the Policy's actual cash value method. (*Id.*) Not true. Progressive explains in its Settlement Summary that sales tax is separate from the damaged vehicle's actual cash value. (*See* Doc. 1-2, PageID 65.) Sales tax is added to the total settlement paid by Progressive because a Florida statute, Section 626.9743(9), requires Progressive to pay sales tax. Florida law, however, does not require an insurer to pay tag and title and/or documentation/processing fees. *See generally* Section 626.9743(5) (allowing Progressive to "adjust[] and settle[] first-party motor vehicle total losses" by any method agreed to by the insured, or any method under which the insurer supports its value determination with a written itemization of any deductions and their amounts, both of which Progressive did). In short, Progressive's payment of sales tax does not "contradict" the Policy; it complies with Florida law.

Lastly, Plaintiff does not even try to explain how a nationwide class could satisfy the threshold requirements of commonality, typicality, and predominance. His only response is that the Motion to Strike is "premature." (Pl's Opp. PageID 209–11.) But this is exactly the type of

---

[1] Plaintiff acknowledges that he was paid sales tax as part of the settlement for his total loss vehicle. Yet he "does not concede that the amount was the full amount to which he is entitled." (Pl's Opp. at PageID 206, n.1.) The Florida statute cited by Plaintiff—Fla. Stat. § 212.05—requires 6% state sales tax. (*See* Compl. ¶ 21, PageID 5). Basic math reveals that the amount paid for sales tax ($969.21) exceeds 6% of the total loss vehicle valuation ($15,320.19). (*See id.* ¶ 18; *see also* Doc. 1-2, PageID 65.). Thus, this allegation is not sufficient to state a breach-of-contract claim for failure to pay sales tax.

situation in which striking nationwide class allegations is appropriate: the proposed class poses insoluble problems apparent on the face of the pleadings. In short, Plaintiff cannot escape the fact that Progressive Select is only licensed to do business in *four states*. Progressive Select simply does not write coverage nationwide. No amount of discovery can change this defect. Likewise, Plaintiff fails to explain how national class resolution would be practical in light of the material variations in state law. Therefore, Plaintiff's nationwide class allegations must be stricken.

## I.     LAW AND ANALYSIS

### A.     The Policy's unambiguous explanation of how Actual Cash Value is calculated does not include title and tag transfer and/or documentation/processing fees.

Plaintiff makes much of the fact that actual cash value is not a defined term, claiming it "upsets the structure of the Policy" for Progressive to rely on the method for determining actual cash value that appears in the Limits of Liability section. (Pl's Opp. at PageID 206–08.) In truth, the method for determining actual cash value is exactly where a reader would expect to find it.

The basic agreement to pay Plaintiff "the lowest of" the actual cash value of the damaged vehicle or the amount necessary to replace it also appears in the Limits of Liability section. (*See* Doc. 10-1, PageID 165.) The actual cash value method at issue appears in the very same section, on the very next page. (*Id.* at PageID 166.) It is part of a series of provisions that tell the insured the conditions that apply to payments for loss. (*See id.* at PageID 165 (explaining that "[p]ayments for loss to a covered auto, non-owned auto, or custom parts or equipment are subject to the following provisions") (internal emphasis omitted).) There is no better place to tell an insured how actual cash value will be calculated than the section that specifies that Progressive will pay the actual cash value.

Equally flawed is Plaintiff's claim that it matters that the Policy uses the phrase "is determined by" instead of "means," (Pl.'s Opp. PageID 206), to tell the insured how actual cash value will be calculated: "The actual cash value *is determined by* the market value, age, and condition of the vehicle at the time the loss occurs." (Doc. 10-1, PageID 165, (Part IV.2(g)) (emphasis added).) There is no requirement that a policy say what a term "means," if the policy tells the insured exactly how that term will be applied (as Part IV.2(g) does). In Florida, as elsewhere, "[t]he lack of a definition of an operative term in a policy does not necessarily render the term ambiguous." *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1076 (Fla. 1998); *Musselwhite v. Fla. Farm Gen. Ins. Co.*, 273 So. 3d 251, 254–55 (Fla. Dist. Ct. App. 2019) ("the lack of a definition for an operative term 'does not, by itself, create an ambiguity'"). And Plaintiff does not (and cannot) explain how the phrase "is determined by" somehow makes the Policy ambiguous. This provision, like any other, must be enforced as written. *Siegle v. Progressive Consumers Ins. Co.*, 819 So.2d 732, 734–35, 739 (Fla. 2002) (finding the limits of liability in Progressive's auto policy unambiguous and noting that the court "cannot manufacture coverage that does not exist" or "create coverage 'out of whole cloth'").

Nor is it true that the Policy needs to be "significantly clearer" to inform an insured that title and tag transfer and/or documentation fees are not included in an actual cash value calculation. The simple point is that those fees have nothing to do with "the market value, age, and condition of the [insured] vehicle at the time the loss occurs." *See Thompson v. Progressive Universal Ins. Co.*, 420 F. Supp. 3d 867 (W.D. Wis. 2019). The Policy, when read as a whole, does not "undermine[] Progressive's argument," (Pl's Opp. at PageID 205), but instead confirms that costs associated with buying a replacement vehicle are not part of the actual cash value of the Insured

4

Vehicle; it distinguishes between replacement cost and actual cash value, and limits Progressive's liability to the lesser amount. (*See* Doc. 10-1, PageID 165, (Part IV.1.)

Plaintiff's argument that the policy lacks an exclusion for these fees (Pl's Opp. at PageID 205–06, 208) misses the point—since there is no coverage for fees, there is nothing to exclude. According to the Supreme Court of Florida, "the existence or nonexistence of an exclusionary provision in an insurance contract is not at all relevant until it has been concluded that the policy provides coverage for the insured's claimed loss." *Siegle*, 819 So.2d at 740 (holding that the absence of an exclusion for diminished value did not impact coverage); *see also Meridian*, 700 So.2d at 162 ("policy exclusions cannot create coverage where there is no coverage in the first place"). Because the method for calculating actual cash value in the Policy is plain and unambiguous and does not include title and tag transfer and/or documentation fees, no exclusion is needed.

### B. *Sos* **and** *Glover* **are not persuasive.**

Plaintiff relies heavily on two cases—*Sos v. State Farm Mut. Auto Ins. Co.*, 396 F. Supp. 3d 1074, 1078–80 (M.D. Fla. 2019) and *Glover v. Liberty Mut. Ins. Co.*, 418 F. Supp. 3d 1161 (S.D. Fla. 2019)[2]—to suggest that Progressive's method for calculating actual cash value should be discarded for the default method for calculating actual cash value under Florida law. (Pl's Opp. at PageID 204.) But the policy in *Glover* had no method for calculating actual cash value. 418 F. Supp. 3d at 1164 (quoting the insurance policy). The same is true in *Sos*. 396 F. Supp. 3d at 1078–80 ("When faced with a policy leaving actual cash value undefined, Florida courts have found the

---

[2] *Glover* is currently stayed pending the Eleventh Circuit decision in *Roth v. GEICO Gen. Ins. Co.*, Case No. 19-11652. 2019 WL 7945690 (S.D. Fla. Dec. 4, 2019).

5

term to mean replacement cost minus depreciation."). Because the policy language in *Sos* and *Glover* is materially different, neither case helps Plaintiff here.

As the *Thompson* court recognized, "[w]hile [these] cases support the general proposition that ACV may include replacement costs in the absence of a definition, these cases do not support the proposition that a policy that defines actual cash value must include replacement costs, especially where the policy at issue considers an alternative basis for recovery of replacement costs at Progressive's election." 420 F. Supp. 3d 867, 2019 WL 6037367, at *2 (distinguishing *Sos* and other cases where, contrary to the Progressive policy, the policies at issue did not define actual cash value whatsoever). Plaintiff cites no case suggesting that a court can ignore a contractual method for calculating actual cash value.

### C. Progressive's payment of sales tax does not undermine the methodology for determining actual cash value in the Policy.

Plaintiff claims that Progressive's offer to pay Plaintiff sales tax as part of his total loss settlement is "inexplicable under Progressive's proposed interpretation of ACV." (Pl's Opp. PageID 206.) Plaintiff is mistaken. Progressive has no contractual obligation to pay sales tax because it is not part of the actual cash value of the total loss vehicle at the time of the accident, as the Settlement Summary Plaintiff attached to his complaint shows. (*See* Doc. 1-2, PageID 65 (calculating an actual cash value of $15,320.19 and then adding to it $969.21 of sales tax for a net settlement of $16,289.40). Progressive pays sales tax as part of the total settlement, *id.*, because Florida law seems to require it. *See* Fla. Stat. 626.9743(9) (stating that the insurer pay sales tax "necessarily incurred" by the insured upon replacement of the vehicle).[3] Thus, Progressive's

---

[3] Unlike the carrier in *Glover*, Progressive does not rely on Section 626.9743(5)(a) in adjusting total loss claims, including the payment of sales tax, in Florida. (*See* Pl's Opp. at PageID 207–08.) Thus, the *Glover* Court's construction of Fla. Stat. § 626.9743(5)(a) is inapposite here.

6

payment of sales tax does not "contradict" its interpretation of ACV; it has nothing to do with it. Progressive pays sales tax to its insureds, like Plaintiff, to comply with Florida law.[4]

On the other hand, Progressive's non-payment of title and tag transfer fees and/or documentation/processing fees also complies with Section 626.9743. Subsections (5)(c)&(d) allow Progressive to "adjust[] and settle[] first-party motor vehicle total losses" by any method agreed to by the insured, or any method under which the insurer supports its value determination with a written itemization of any deductions and their amounts. As set forth in Progressive's Motion, Progressive complied with both methods under (c) and (d), neither of which require payment of title, registration, license plate, and documentation/processing fees. (Def's Mot. to Dismiss at PageID 120–21.) Progressive's method was agreed to by the insured because it appeared in the Policy; and Progressive supported its actual cash value determination with documentation retained in the claims file through the Settlement Summary, which was attached to the Complaint as Exhibit B. Thus, Florida law does not independently require Progressive to pay replacement costs, such as title and tag transfer fees and/or documentation/processing fees.[5]

### D. Should Plaintiff's claim survive dismissal, Plaintiff's nationwide class action allegations must be stricken.

This is not a situation in which discovery is necessary to establish an "adequate 'foundation to conduct the 'rigorous analysis' required by Rule 23.'" (Pl's Opp. at PageID 209.) Indeed, "further discovery will not [and cannot] alter [a] central defect in the class claim" (*id.*): Progressive

---

[4] Plaintiff also tries to use Progressive's payment of sales tax in Florida to distinguish *Thompson* because Progressive does not pay sales tax as part of total loss settlements in Wisconsin. But contrary to the Florida statute, no Wisconsin statute requires the payment of sales tax, *Thompson*, 420 F. Supp. 3d 867, 2019 WL 6037367, *4, which incidentally reveals again the material differences of state law that render nationwide class treatment impractical.

[5] Discovery would reveal that Progressive's practice related to sales tax is dependent on the unique law in each state in which it writes coverage.

Select does not write coverage nationwide; it is only licensed to do business in four states. This is a critical flaw, which cannot be remedied with discovery, that did not exist in the cases relied on by Plaintiff. *See id*. at 13-14 (citing *Sullivan v. Gov't Employees Ins. Co.*, No 6:17-cv-891, 2018 WL 3650114, at *8 (S.D. Fla. Apr. 6, 2018);[6] *Steinberg v. Nationwide Mut. Ins. Co*., 224 F.R.D. 67, 74 (E.D.N.Y. 2004); *McKeage v. TMBC, LLC*, 847 F.3d 992, 1002 (8th Cir. 2017); *Klay v. Humana, Inc.*, 382 F.3d 1241, 1267 (11th Cir. 2004)).

Moreover, Plaintiff does not even attempt to explain how national class resolution would be practical in light of the material variations in state law. This lack of effort is in stark contrast to *Steinberg v. Nationwide Mut. Ins. Co*., 224 F.R.D. 67, 74 (E.D.N.Y. 2004), where the plaintiff undertook an extensive analysis of the variations of state law to support class certification.

*McKeage* and *Klay* do not support Plaintiff's argument either. In *Klay*, the Eleventh Circuit found that the district court abused its discretion in certifying plaintiff's breach-of-contract claims for classwide treatment. 382 F.3d at 1267. And *McKeage* only applied one state's law (Missouri). 847 F.3d at 1002. Neither of these cases addressed whether material variations in state law require striking national class allegations, which is the issue before this Court.

Plaintiff's only response is that the Motion to Strike is "premature." (Pl's Opp. at PageID 209–11.) But Plaintiff's nationwide class allegations are contrary to his Complaint, which only identifies twenty-eight states with laws that supposedly "mandate[] that insurers pay all mandatory title, registration and license plate fees in connection with a total loss[.]" (Compl. ¶ 15,

---

[6] While the plaintiff initially proposed a forty-nine state class, the court ultimately only certified a Florida class. *Jones v. Gov't Employees Ins. Co.*, No 6:17-cv-891, 2019 WL 1490703, at *8 (S.D. Fla. Apr. 4, 2019) (while the named plaintiff on the case caption changed from Sullivan to Jones, the case is the same).

PageID 4.) And even within the twenty-eight states Plaintiff claims mandate payment of fees, the statutes and regulations Plaintiff cite show different states require payment of different fees as explained in Progressive's opening Motion. (*See* Def's Mot. to Dismiss at Page ID 124.) Thus, Plaintiff's Complaint alone shows that a nationwide class cannot be certified.

Therefore, Plaintiff's nationwide class allegations can—and should—be stricken before the parties and the Court expend substantial time and resources on a fatally flawed effort to certify a nationwide class.

## II. CONCLUSION

The Progressive Policy includes a unique provision that plainly sets out the method for determining actual cash value: "the market value, age, and condition of the [insured] vehicle at the time the loss occurs." Title and tag transfer and/or documentation/processing fees are costs not associated with the value of the insured vehicle at the time of the loss, and Progressive's payment of sales tax under Florida law does not make this provision of the policy any less clear. Therefore, Progressive respectfully requests that the Court confirm the Policy applies as written and dismiss all claims against Progressive. In the alternative, Progressive respectfully requests that the Court strike Plaintiff's nationwide class allegations for the reasons set forth above.

Respectfully submitted,

*/s/ Jennifer L. Mesko*
Karl A. Bekeny (0075332)
Benjamin C. Sassé (0072856)
Jennifer L. Mesko (0087897)
Courtney E. S. Mendelsohn (0091788)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Telephone:   216.592.5000
Facsimile:    216.592.5009

|  |  |
|---|---|
| E-mail: | karl.bekeny@tuckerellis.com |
|  | benjamin.sasse@tuckerellis.com |
|  | jennifer.mesko@tuckerellis.com |
|  | courtney.mendelsohn@tuckerellis.com |

*Attorneys for Defendant Progressive Select Insurance Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

>  */s/ Jennifer L. Mesko*
> Karl A. Bekeny (0075332)
> Benjamin C. Sassé (0072856)
> Jennifer L. Mesko (0087897)
> Courtney E. S. Mendelsohn (0091788)
> TUCKER ELLIS LLP
> 950 Main Avenue, Suite 1100
> Cleveland, OH 44113
> Tel:        216.592.5000
> Fax:        216.592.5009
> E-mail:   karl.bekeny@tuckerellis.com
>                benjamin.sasse@tuckerellis.com
>                jennifer.mesko@tuckerellis.com
>                courtney.mendelsohn@tuckerellis.com
>
> *Attorneys for Defendant Progressive Select Insurance Company*

4639284.1